**BATTERY STEAMSHIP CORP., Plaintiff-Appellant,**

v.

**REFINERIA PANAMA, S. A. and United States of America, Defendants-Appellees.**

No. 342, Docket 73–2710.

United States Court of Appeals, Second Circuit.

Argued Feb. 19, 1975.

Decided April 7, 1975.

529 (6th Cir. 1973), aff'd, —— U.S. ——, 95 S.Ct. 1716, 44 S.Ct. 295 (1975).

Robert J. Giuffra, New York City (Dougherty, Ryan, Mahoney, Pellegrino & Giuffra and Arthur Ian Miltz, New York City, on the brief), for plaintiff-appellant.

Terence Gargan, Admiralty and Shipping Section, New York, Dept. of Justice (Carla A. Hills, Asst. Atty. Gen., Paul J. Curran, U. S. Atty., S.D.N.Y., and Gilbert S. Fleischer, Atty. in Charge, Admiralty and Shipping Section, New York, on the brief), for defendants-appellees.

Before ANDERSON, MULLIGAN and VAN GRAAFEILAND, Circuit Judges.

ROBERT P. ANDERSON, Circuit Judge:

The SS Elwell, owned by the appellant, Battery Steamship Corp., and under time charter to the appellee, Military Sea Transport Service (MSTS), an agency of the United States, was damaged on June 25, 1967, when an oil carrier owned and operated by Refineria Panama, S. A. (Refineria), struck the Elwell while attempting to refuel her in Colon Bay, Republic of Panama. Within a day of the accident, Battery Steamship notified MSTS, which had ordered and paid for the refueling operation, that the collision had occurred and that MSTS was liable under the terms of the charter party for the resulting damage.

The time charter was amended on three separate occasions, following the above described events. By the terms of the third amendment, dated August 7, 1968, Battery Steamship agreed, *inter alia*,[1] to "waive all damage claims except those based on damage reports submitted with [its] letter dated 5 August 1968." None of the damage reports, or the letter itself, included or mentioned the damage resulting from the collision in Colon Bay.

After the charter had expired, however, Battery Steamship sought reimbursement for the damage which arose out of the June 25, 1967 incident, but MSTS refused to pay the claim. Thereafter Battery Steamship brought this action in admiralty in June 1969 against the United States to recover $47,595. In August 1971 Battery Steamship amended its complaint to include Refineria as a party defendant, but the suit against Refineria was dismissed as time barred.

The Government filed a motion for summary judgment, contending that Battery Steamship had contractually waived its claim, and that MSTS was not liable, in any event, under the terms of the charter party for damages caused by the negligence of independent contractors during refueling operations.

Battery Steamship argued that summary judgment was inappropriate because there was a genuine issue of fact concerning the meaning of the waiver and the intent of the parties. Thereafter affidavits were submitted by both sides which showed that, during the negotiation of the third charter amendment, it had been assumed that the release would apply only to the claims for incidental damages unreported by the Master as of August 5, 1968.[2] Battery

---

1. Amendment 3, in pertinent part, provided:

"1. Upon termination of the contract period, the vessel shall be redelivered on arrival Pilot Station Puget Sound or equivalent distance to Pilot Station Columbia River, [owner's] option, vice U. S. Gulf . . .

2. The Government shall pay the [owner] $11,500 in consideration for the change in redelivery.

3. Repatriation of the crew shall be for the [owner's] account.

4. The [owner] waives all damage claims except those based on damage reports submitted with [the] letter dated 5 August 1968.

5. The [owner] waives redelivery notices.

6. No off-hire survey will be conducted except notation of fuel on board on arrival at redelivery point.

7. Prior to proceeding to the redelivery point, the Government shall remove all sheathing, if any, and broom sweep at Inchon, Korea, and upon completion thereof, the vessel shall proceed promptly to the redelivery area."

2. For example, Mr. A. Dan Klyver, who negotiated Amendment 3 on behalf of Battery Steamship, stated:

"It was [my] understanding from [my] discussions with [the representatives of MSTS] that the waiver provision set forth in Amendment No. 3 was only intended to cover unreported damages of an incidental nature which were never reported by the Master . . . and which damages are normally found on an off-hire survey. [Amend-

Steamship also filed a cross-motion for partial summary judgment asking that the affirmative defense, based upon the release, be stricken on the ground that there was insufficient consideration to support a waiver of the claims arising out of the Colon Bay incident.

The district court, however, held that the original charter and its various amendments constituted an integrated agreement which, by its clear terms, released the United States from potential liability for damages not reported in the letter of August 5, 1968. It also concluded that the affidavits did not disclose a material issue of fact in spite of the fact that portions of the evidentiary material contradicted the unambiguous meaning of the writing, because such portions were barred by the parol evidence rule. It therefore entered summary judgment in favor of the Government. The cross-motion for partial summary judgment was denied on the ground that the release, when viewed in the context of the other provisions of the amendment, was supported by a consideration. No ruling was made on the alternative defense that MSTS was not liable in any event under the terms of the charter party for the negligence of independent contractors.

Summary judgment may properly be granted when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c) F.R.Civ.P.; Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 467, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962); Schwartz v. Associated Musicians of Greater New York, Local 802, 340 F.2d 228, 232 (2d Cir. 1964). Infer-

ment 3 included an agreement to waive an off-hire survey.]"

Mr. Norton M. Crockett, the Government representative, stated:

"Q. At the time you had the discussions with Mr. Klyver, was it your intention that all claims which were unreported would be waived . . . by the owner? A. Right.

Q. But if that claim had been reported by the owner, that would be part of this? A. Right.

Q. Part of the claim? A. Right. If it was being processed, it would be considered.

ences to be drawn from the underlying facts set forth in the supporting evidentiary material "must be viewed in the light most favorable to the party opposing the motion." United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). In the present case, because there have been submitted by both parties affidavits which show that there is, in fact, a dispute as to the actual meaning of the release, the central issue on appeal is whether the parol evidence rule barred this testimony from consideration by the district court.

 The parol evidence rule is generally defined as follows:

"When two parties have made a contract and have expressed it in a writing to which they have both assented as the complete and accurate integration of that contract, evidence, whether parol or otherwise, of antecedent understandings and negotiations will not be admitted for the purpose of varying or contradicting the writing." (Footnote omitted.) 3 A. Corbin, Contracts, § 573, at 357 (1960).

Although the federal and all state jurisdictions apparently accept this classic statement of the parol evidence rule, they do not all agree upon its interpretation and application.[3] A preliminary question, therefore, is what law applies.

 In the present case it is abundantly clear that the principles of maritime contract law govern. The contract, which is the subject of the litigation, is a time charter and its amendments relate to a particular vessel. Its terms "per-

Q. As what would it be considered, as . . . a claim? A. Right."

**3.** We note, for example, that under New York law a contract which appears complete on its face is an integrated agreement as a matter of law. Higgs v. De Maziroff, 263 N.Y. 473, 189 N.E. 555 (1934). This conflicts with the law applicable in most jurisdictions, which is that integration is a question of fact on which all evidence may be considered. See, Corbin, The Parol Evidence Rule, 53 Yale L.J. 603 (1944).

tain directly to and [are] necessary for commerce or navigation upon navigable waters," 7A J. Moore, Federal Practice ¶ .230[2], at 2761 (1972). From no point of view can the application of the parol evidence rule to a maritime contract be regarded as "peculiarly a matter of state and local concern," Kossick v. United Fruit Co., 365 U.S. 731, 741, 81 S.Ct. 886, 893, 6 L.Ed.2d 56 (1961). See also Hellenic Lines Limited v. Gulf Oil Corporation, 340 F.2d 398, 402 (2 Cir. 1965). It has long been recognized that a special need exists for uniformity in the rules governing the application of such matters as the Statute of Frauds in maritime contracts, Union Fish Co. v. Erickson, 248 U.S. 308, 39 S.Ct. 112, 63 L.Ed. 261 (1919), and like considerations apply to the parol evidence rule.

> "Where states have sought to enter the field [of admiralty] by statute their efforts usually have been thwarted as infringements of a field reserved to Congress and the federal courts by the Constitution and as interferences with the uniformity requirements of the maritime law. . . . . And in the field of maritime contracts generally, the cases are clear that in most situations federal, and not state, principles apply to determine the respective rights and duties of the parties." A/S J. Ludwig Mowinckels R. v. Commercial Stevedoring Co., 256 F.2d 227, 230 (2 Cir. 1958).

The trial court ruled that the parol evidence rule barred consideration of the statements contained in the affidavits because the language of ¶ 4 was "clear and unambiguous on its face" and the charter and its three amendments constituted an integrated contract.

But, the statements contained in the affidavits, see footnote 2 *ante,* viewed in the light most favorable to appellant, raise two questions which should have been decided before the district court even reached the issue upon which it ultimately rested its decision, *i. e.,* whether the parties intended the amended time charter to integrate their entire agreement concerning potential liability for damages to the vessel; and if they did so intend, whether the writing could be reformed on the ground that it failed to reflect their agreement accurately because of some mutual mistake or accident on their part.

■ Both issues are factual. "An agreement is integrated where the parties thereto adopt a writing or writings as the final and complete expression of the agreement." Restatement, Contracts, § 228 (1932).

"`. . . It is an essential of an integration that the parties shall have manifested assent not merely to the provisions of their agreement, but to the writing or writings in question as a final statement of their intentions as to the matters contained therein. If such assent is manifested the writing may be a letter, telegram or other informal document. That a document was or was not adopted as an integration may be proved by any relevant evidence." Restatement, *supra,* § 228, Comment a.

See also Hellenic Lines, Ltd. v. United States of America and Commodity Credit Corp., 512 F.2d 1196 (2 Cir. 1975). Although the writing may appear complete on its face, such appearance is some evidence of intent but does not establish as a matter of law that the agreement is integrated. 3 A. Corbin, Contracts, § 573 at 360 (1960); 9 Wigmore, Evidence (3rd ed. 1940), § 2430(2) at 98; Peter Kiewit Sons' Co. v. Summit Construction Co., 422 F.2d 242, 270 (8 Cir. 1969); J. I. Case Threshing Mach. Co. v. Buick Motor Co., 39 F.2d 305 (8 Cir. 1930); United States Navigation Co. v. Black Diamond Lines, 124 F.2d 508 (2 Cir.), cert. denied, 315 U.S. 816, 62 S.Ct. 805, 86 L.Ed. 1214 (1942). And, that a writing contains words which seem clear on their face does not, by itself, establish that it accurately reflects the agreement of the parties.

■ The parol evidence rule, moreover, renders legally inoperative only evidence of prior understandings and negotiations which contradicts the unambiguous meaning of a writing which *com-*

*pletely* and *accurately* integrates the agreement of the parties. On the issues of whether a contract is void, voidable or reformable because of illegality, fraud, mistake or any other reason and whether or not parties assented to a particular writing as the complete and accurate "integration" of their contract,

> " . . . there is no 'parol evidence rule' to be applied. On these issues, no relevant evidence, whether parol or otherwise, is excluded. No written document is sufficient, standing alone, to determine any one of them, however, long and detailed it may be, however formal, and however many may be the seals and signatures and assertions. No one of these issues can be determined by mere inspection of the written document." 3 A. Corbin, Contracts, § 573, at 360.

■■■ Because there was evidence before it which properly established issues as to material facts, we hold that the district court erred in granting summary judgment to the United States.[4] We, therefore, reverse and remand for further proceedings.[5]

4. The appellant's cross-motion for partial summary judgment, in which it sought to have the affirmative defense of release stricken on the ground of lack of consideration, was denied by the district court. It properly held that, viewed in light of the other provisions of Amendment 3, the release was supported by sufficient consideration to make it enforceable, because MSTS had assumed new obligations under Amendment 3, see footnote 1, *ante*, which concededly had some value. See, Restatement, Contracts, §§ 77, 81 (1932); 1 Corbin, Contracts, § 127. Appellant argues however, that the value of the Government's new promises was relatively insignificant compared to the $47,595 claim which appellant allegedly released. The relative value of a promise and of the consideration given for it, however, is not of judicial concern and does not affect the enforceability of a contract or any of its provisions. Warner-Lambert Pharm. Co. v. John J. Reynolds, Inc., 178 F.Supp. 655 (S.D.N.Y. 1959), aff'd, 280 F.2d 197 (2 Cir. 1960). This is not to say, however, that evidence of substantial disparity of consideration could not be considered on the issues of integration and mutuality of mistake.

5. Because we remand to the district court for it to decide the issues of integration and mutuality of mistake, we need not now decide

whether it correctly ruled on the issue which it held dispositive, whether the "extrinsic evidence" could be considered for the purpose of clarifying (rather than contradicting) the meaning of the writing. We emphasize, however, that federal maritime law will apply on this question, should it again arise in the district court. Lucie v. Kleen-Leen, Inc., 499 F.2d 220, 221 (7 Cir. 1974), contains, in the opinion of this court, the proper statement of the law on this issue.

> "We cannot accede to the . . . assertion that no extrinsic evidence reflecting on the parties' intentions should be considered. It is well-established that the test of admissibility of extrinsic evidence to explain the meaning of a written instrument is not whether the instrument appears to be plain and unambiguous, but whether the offered evidence is relevant to prove a meaning to which the language of the instrument is reasonably susceptible. A rule that limits the determination of the meaning of a written contract to its four-corners, merely because the court deems it clear and unambiguous, is a rule that ignores the intention of the parties or presumes a degree of verbal precision and crystallization presently unattainable by our language."