617 F.2d 936
 28 UCC Rep.Serv. 402
 The TOKIO MARINE AND FIRE INSURANCE COMPANY, LIMITED, et
al., Plaintiffs- Appellants-Cross-Appellees,
v.
McDONNELL DOUGLAS CORPORATION, Defendant-Appellee-Cross-Appellant.
McDONNELL DOUGLAS CORPORATION, Defendant and Third-Party
Plaintiff- Appellee-Cross-Appellant,
v.
JAPAN AIR LINES CO., LTD., Third-Party Defendant-Cross-Appellee.
 Nos. 17, 22, Dockets 79-7045, 79-7065.
 United States Court of Appeals,
Second Circuit.
 Argued Oct. 26, 1979.
Decided March 6, 1980.
 
 George N. Tompkins, Jr., (Condon & Forsyth, Lawrence Mentz and Desmond T. Barry, Jr., New York City, on the brief), for plaintiffs-appellants-cross-appellees Tokio Marine and Fire Insurance Co., Ltd., et al., and third-party defendant-cross-appellee Japan Air Lines Co., Ltd.
 Harold U. McCoy, Mineola, N. Y. (Scott Fairgrieve and Crowe, McCoy, Agoglia, Fogarty & Zweibel, Mineola, N. Y., on the brief) for defendant and third-party plaintiff-appellee-cross-appellant McDonnell Douglas Corp.
 Before MOORE, TIMBERS, and VAN GRAAFEILAND, Circuit Judges.
 VAN GRAAFEILAND, Circuit Judge:
 
 
 1
 On November 28, 1972, a DC-8 plane, manufactured by McDonnell Douglas Corporation (McDonnell) and owned and operated by Japan Air Lines (JAL), crashed during take-off in Moscow, U.S.S.R., killing fifty-two passengers and seriously injuring ten others. Numerous lawsuits were brought against McDonnell and JAL on behalf of injured and deceased passengers, and all were settled. McDonnell, JAL, and JAL's subrogated insurance carriers, (hereinafter collectively referred to as Tokio Marine) are now litigating their own differences. Tokio Marine seeks recovery from McDonnell for loss of JAL's plane and contribution or indemnity for payments made in settlement of the passenger claims. McDonnell, in turn, seeks contribution or indemnity from Tokio Marine and JAL for payments it made on passenger claims.
 
 
 2
 The district court, Motley, J., granted summary judgment in favor of McDonnell on Tokio Marine's claims and in favor of Tokio Marine and JAL on McDonnell's counterclaim and crossclaim. We affirm.
 
 The Property Damage Claim
 
 3
 Between 1956 and 1970, JAL, one of the largest airlines in the world, purchased forty-one DC-8 planes from McDonnell. The plane that crashed was the twenty-seventh in this series and was delivered to JAL on July 18, 1969. The contracts of purchase were lengthy and detailed, with hundreds of specifications, terms, and conditions, all of which were reviewed and approved by JAL's technical and legal departments. In addition, representatives of JAL were permitted to be present at the McDonnell plant throughout the manufacturing process.
 
 
 4
 The terms of McDonnell's sales warranties were negotiable and depended to some extent upon what its purchasers were willing to pay; the broader warranties commanded a higher price. See, e. g., Delta Air Lines, Inc. v. Douglas Aircraft Co., 238 Cal.App.2d 95, 103 & n.5, 47 Cal.Rptr. 518, 523 & n.5 (1965). In the warranty article of the contract for the plane that crashed, McDonnell agreed to repair or replace any defective equipment that became apparent to JAL within one year or 2,500 flying hours, whichever expired first after delivery of the aircraft, provided that the defect was reported to McDonnell in writing within sixty days after it became apparent. The article also provided:
 
 
 5
 "THE WARRANTY PROVIDED IN THIS ARTICLE AND THE OBLIGATIONS AND LIABILITIES OF SELLER THEREUNDER ARE EXCLUSIVE AND IN LIEU OF AND BUYER HEREBY WAIVES ALL OTHER REMEDIES, WARRANTIES, GUARANTIES OR LIABILITIES, EXPRESS OR IMPLIED, ARISING BY LAW OR OTHERWISE (INCLUDING WITHOUT LIMITATION ANY OBLIGATIONS OF THE SELLER WITH RESPECT TO FITNESS, MERCHANTABILITY AND CONSEQUENTIAL DAMAGES) OR WHETHER OR NOT OCCASIONED BY SELLER'S NEGLIGENCE. THIS WARRANTY SHALL NOT BE EXTENDED, ALTERED OR VARIED EXCEPT BY A WRITTEN INSTRUMENT SIGNED BY SELLER AND BUYER."
 
 
 6
 Among the equipment covered by the one year or 2,500 hour repair or replacement warranty was the plane's spoiler system, which consisted of five rectangular panels on each wing that could be raised when the plane was landing to assist in bringing it to a halt. Because the spoilers interfered with the air flow over the wings, they were not to be used when the plane was in flight. To guard against this pilot error, the contract specifications called for a "heavy spring load" in the spoiler activating mechanism. Inadvertent extension of the spoilers was also to be prevented by some form of interlocking device. For purposes of the summary judgment motion, McDonnell conceded that neither the spring load nor the interlock was installed. It is undisputed, however, that, although JAL operated the plane for almost three and one-half years, it made no written complaint to McDonnell about the absence of these devices.
 
 
 7
 Tokio Marine contended below that the absence of the spring load and interlock was one of the producing causes of the crash and that therefore it was entitled to recover from McDonnell the full value of the plane. It gave several reasons why that recovery was not precluded by the warranty provisions above quoted. The district judge was not convinced, and we are similarly unpersuaded.
 
 
 8
 Tokio Marine asserted that its first cause of action was based upon strict liability in tort rather than breach of warranty and that California law, which the parties agree is applicable here, prohibits a manufacturer from disclaiming strict tort liability. We agree with the district judge that this argument is based upon a misconception of California law. Despite the absence of a definitive holding by the California Supreme Court, the United States Court of Appeals for the Ninth Circuit has concluded that the doctrine of strict tort liability would not be applied in California in a case where the sales contract was between two large corporations who had negotiated from positions of relatively equal strength and the plaintiff's claim was for damage to the property sold. Scandinavian Airlines System v. United Aircraft Corp., 601 F.2d 425, 429 (9th Cir. 1979). The court found support for its position in Kaiser Steel Corp. v. Westinghouse Electric Corp., 55 Cal.App.3d 737, 746-48, 127 Cal.Rptr. 838, 844-45 (1976), a decision of the California Court of Appeal.
 
 
 9
 It is difficult to fault the Ninth Circuit's holding. The court thoroughly analyzed California law, and its conclusion is supported by reasoning that has found acceptance in a number of jurisdictions. See, e. g., Fredonia Broadcasting Corp. v. RCA Corp., 481 F.2d 781, 797 (5th Cir. 1973); Southwest Forest Industries, Inc. v. Westinghouse Electric Corp., 422 F.2d 1013, 1020-21 (9th Cir.), cert. denied, 400 U.S. 902, 91 S.Ct. 138, 27 L.Ed.2d 138 (1970); Sioux City Community School Dist. v. International Tel. & Tel. Corp., 461 F.Supp. 662, 664-65 (N.D.Iowa 1978); Ebasco Services, Inc. v. Pennsylvania Power & Light Co., 460 F.Supp. 163, 222-26 (E.D.Pa.1978). Similar reasoning has prompted several courts to hold that the parties to a contract entered into in a commercial setting such as existed herein may disclaim or waive strict tort liability, see, e. g., Idaho Power Co. v. Westinghouse Electric Corp., 596 F.2d 924, 927-28 (9th Cir. 1979); Delta Air Lines, Inc. v. McDonnell Douglas Corp., 503 F.2d 239, 245-46 (5th Cir. 1974), cert. denied, 421 U.S. 965, 95 S.Ct. 1953, 44 L.Ed.2d 451 (1975), and it appears that California courts would reach a similar result. Delta Air Lines, Inc. v. Douglas Aircraft Co., supra, 238 Cal.App.2d at 101-05, 47 Cal.Rptr. at 522-24. Whichever line of authority we look to, the result is the same. McDonnell cannot be held liable under a theory of strict tort liability.
 
 
 10
 Tokio Marine's contentions that it might recover for McDonnell's negligent failure to warn or its negligent misrepresentations also were properly rejected by the district judge. The disclaimer clause was broadly inclusive, and there is no merit to Tokio Marine's argument that the parties intended to compartmentalize McDonnell's negligence under pre-delivery and post-delivery labels. JAL agreed to waive "all liabilities . . . arising by law or otherwise . . . whether or not caused by seller's negligence." This waiver is broad enough to include a claim for post-delivery failure to warn. Varig Airlines v. Boeing Co. (1975-1977 Transfer Binder) Prod. Liab. Rep. (CCH) P 8028 (W.D.Wash.1977); see Delta Air Lines, Inc. v. Douglas Aircraft Co., supra, 238 Cal.App.2d at 101, 47 Cal.Rptr. at 522.
 
 
 11
 Although Tokio Marine did not plead a cause of action for misrepresentation, it subsequently asserted a right to recover for negligent misrepresentation, contending that under California law a claim based upon misrepresentation could not be waived. In making this argument, Tokio Marine relied primarily upon Cal.Civ.Code § 1668, which holds that contracts aimed at excepting anyone from responsibility for fraud, willful injury, or willful or negligent violation of law are against public policy. This reliance was misplaced. Where there has been no violation of law, negligent misrepresentations in a commercial transaction such as that involved herein do not fall within the provisions of § 1668. Delta Air Lines, Inc. v. Douglas Aircraft Co., supra, 238 Cal.App.2d at 105-06, 47 Cal.Rptr. at 524-25; Werner v. Knoll, 89 Cal.App.2d 474, 475-77, 201 P.2d 45, 46-47 (1948).
 
 
 12
 The district court did not err in disposing of the foregoing issues by summary judgment. The court was required to determine as a question of law whether the terms of the contract were sufficiently ambiguous to permit any proof concerning the subjective intent of the parties. National Utility Service, Inc. v. Whirlpool Corp., 325 F.2d 779, 781 (2d Cir. 1963). Having correctly decided that no such ambiguity existed and that there was no material dispute on the facts, the district judge quite properly proceeded via the summary judgment route. Parish v. Howard, 459 F.2d 616, 618-20 (8th Cir. 1972); Freeman v. Continental Gin Co., 381 F.2d 459, 465-68 (5th Cir. 1967); Kent v. United States, 343 F.2d 349, 350-51 (2d Cir. 1965).
 
 
 13
 Tokio Marine's final argument in support of its cause of action for property damage was based upon § 2719(2) of the California Commercial Code, which provides that where circumstances cause an exclusive or limited remedy to fail of its essential purpose, "remedy may be had as provided in this code." It is Tokio Marine's position that it is entitled to recover in tort for the value of the plane because Douglas knew within the warranty period of the defects or dangerous conditions that caused the crash and took no steps to correct them and therefore the limited remedy provided by the contract failed of its essential purpose.
 
 
 14
 Section 2719(1) permits sellers to incorporate provisions in their sales contracts which limit the buyers' remedies. As in the instant case, a seller's liability may be altered by limiting the buyer's remedy to the "repair and replacement of nonconforming goods or parts . . . ." The effect of limitations such as these must be such, however, that the purchaser is left with a "fair quantum of remedy" for breach of the seller's contractual obligations. See AES Technology Systems, Inc. v. Coherent Radiation, 583 F.2d 933, 939 (7th Cir. 1978) (quoting U.C.C. § 2-719, Official Comment 1). Thus, a buyer's remedy may not be limited to repair or replacement if, upon proper demand by the buyer, the seller is unwilling or unable to effect repair or replacement. Id. There is no contention that McDonnell was either unwilling or unable to correct the alleged defects in its DC-8. It was never asked to do so.
 
 
 15
 If McDonnell negligently failed to install the spring load or interlock, it is chargeable with knowledge of the defects, and McDonnell concedes such knowledge for purposes of its summary judgment motion. However, it was for negligent conduct such as this that JAL, for valuable consideration, agreed to curtail its remedies. It did not limit its waiver to only those negligent acts of which it had notice. U.C.C. § 2-719(2) "becomes operative when a party is deprived of its contractual remedy . . . ." Soo Line R. R. v. Fruehauf Corp., 547 F.2d 1365, 1371 n.7 (8th Cir. 1977). JAL's contractual remedy was fully available to it throughout the warranty period. It had copies of all the blueprints, drawings, overhaul manuals, and schematics of the plane; it inspected and approved the plane and did its own overhaul and repair work. It makes no claim that McDonnell was guilty of intentional fraud. It knowledgeably accepted and insured against the risk of McDonnell's negligence. Where two equal bargainers such as McDonnell and JAL agree as to the appropriate remedy for such negligence, they should be held to the terms of their bargain.
 
 
 16
 Assuming for the argument that there was a failure of essential purpose, it does not follow that such failure entitles Tokio Marine to recover in tort for the full value of the plane. Cal.Com.Code § 2719(2) provides that where a limited remedy fails of its essential purpose, "remedy may be had as provided in this code." In S. M. Wilson & Co. v. Smith International, Inc., 587 F.2d 1363, 1374 (9th Cir. 1978), the court held that under the California statute the failure of essential purpose of a limited remedy of repair "did not sweep away entirely the disclaimer of implied warranties" so as to revive an implied warranty of fitness for purpose. Because Tokio Marine seeks to enforce no remedies "provided in this code", its position is not as strong as was that of the unsuccessful plaintiff in S. M. Wilson & Co. Under California law, Tokio Marine's code remedies are in contract, not in tort. Id. at 1376. Tokio Marine sued in negligence because its cause of action for breach of warranty was barred by the California statute of limitations. See Cal.Com.Code § 2725(1). However, Tokio Marine cannot construct a remedy in tort from the provisions of section 2719(2) where the California code does not otherwise provide for a remedy in tort.
 
 The Claims for Contribution or Indemnity
 
 17
 Although there are cross-claims between the parties for contribution and indemnity. Tokio Marine has agreed that, if McDonnell's claim is barred, its own claim also must fail. Our discussion, therefore, will be confined to the contentions of McDonnell.
 
 
 18
 In dismissing McDonnell's claim, the district court relied upon American Motorcycle Ass'n v. Superior Court, 20 Cal.3d 578, 603-04, 578 P.2d 899, 915-16, 146 Cal.Rptr. 182, 198-99 (1978), which held that a tort-feasor who has settled a plaintiff's claim in good faith is discharged from any claim of indemnity by a concurrent tort-feasor. McDonnell contends that the district court erred in relying upon American Motorcycle because, McDonnell says, the actions which JAL settled were created by the Warsaw Convention[1] and were contractual, not tortious, in nature. It is true, in this Circuit at least, that the Warsaw Convention is held to have created a cause of action permitting recovery for travelers injured or killed in international flight. See Benjamins v. British European Airways, 572 F.2d 913 (2d Cir. 1978), cert. denied, 439 U.S. 1114, 99 S.Ct. 1016, 59 L.Ed.2d 72 (1979). However, it remains an open question whether that cause of action sounds in contract or in tort. Id. at 916. Moreover, the complaints in the actions which were settled contain allegations of tortious wrongdoing that were not dependent upon a Convention-created contract cause of action. Article 24 of the Convention provides that "any action for damages, however founded, can only be brought subject to the conditions and limits" of the Convention. See Reed v. Wiser, 555 F.2d 1079, 1083 (2d Cir.), cert. denied, 434 U.S. 922, 98 S.Ct. 399, 54 L.Ed.2d 279 (1977). If, as McDonnell contends, the Convention draftsmen intended to create a contract cause of action, the above-quoted phrase indicates that they did not intend that cause of action to be exclusive. See Benjamins v. British European Airways, supra, 572 F.2d at 922 (Van Graafeiland, J., dissenting). In view of the broad allegations in the complaints, the district court did not err in holding that JAL was a settling tort-feasor within the meaning of American Motorcycle Ass'n v. Superior Court, supra.
 
 
 19
 The district court found nothing in the circumstances surrounding the settlements made in Japan that created any inference of bad faith or collusion. JAL's Japanese settlements followed those of McDonnell, and the total amount paid by JAL was in excess of $1,000,000. McDonnell has not contended, either in this Court or in the district court, that JAL proceeded in bad faith. The district court did not err, therefore, in refusing to delay summary judgment in order to permit McDonnell to depose a representative of JAL in order "to avoid any doubt" as to whether bad faith existed. See Stambaugh v. Superior Court, 62 Cal.App.3d 231, 239, 132 Cal.Rptr. 843, 848 (1976).
 
 
 20
 McDonnell contends finally that it is unfair to apply the rule of American Motorcycle Ass'n v. Superior Court, supra, in cases where, as here, one defendant's liability is limited by the terms of the Warsaw Convention and the other's is not. This argument is not unlike that which is made when one defendant has limited insurance coverage and the coverage of the other is unlimited. It has an equitable appeal, but that appeal is addressed to the wrong tribunal. If exceptions are to be made to the rule of American Motorcycle, they should be made by the California legislature or judiciary, not by this Court.
 
 
 21
 The judgments appealed from are affirmed.
 
 
 
 [1]
 Convention for the Unification of Certain Rules Relating to International Transportation by Air, 49 Stat. 3000, T.S.No.876, 137 L.N.T.S. 11 (adherence of United States proclaimed Oct. 29, 1934)