**Ricardo GARZA, Plaintiff,**

v.

**MARINE TRANSPORT LINES, INC.,**
**Defendant and Third–Party Plaintiff,**

v.

**NORFOLK SHIPBUILDING &**
**DRYDOCK CORPORATION,**
**Third–Party Defendant.**

**No. 84 Civ. 6610 (IBC).**

United States District Court,
S.D. New York.

Feb. 9, 1988.

Healy & Baillie, New York City, for defendant and third-party plaintiff; Thomas L. Rohrer, of counsel.

Frederick W. Meeker, New York City, for third-party defendant.

## OPINION

IRVING BEN COOPER, District Judge.

Third-party defendant Norfolk Shipbuilding & Drydock Corporation ("Norshipco") moves for summary judgment, asserting that this third-party action is time-barred by the terms of its agreement with third-party plaintiff Marine Transport Lines, Inc. ("MTL"). MTL opposes the motion, contending that this is a personal injury claim not precluded by the exculpation language in the contract. Upon all of the pleadings and papers filed with this Court and the following findings of fact and conclusions of law, we are compelled to grant Norshipco's motion. This third-party action is therefore dismissed in all respects.

## BACKGROUND

Plaintiff Richard Garza commenced the instant litigation to recover damages for personal injuries sustained while a crew member on the MARINE CHEMIST, a vessel owned by defendant/third-party plaintiff MTL. The MARINE CHEMIST entered Norshipco's yard for repairs on October 11, 1983. Norshipco performed repair work pursuant to the repair contract until November 10, 1983 at which time the vessel was redelivered to MTL. Within the first week after the vessel was returned, it was docked without incident. However, on November 17, 1983, the second time the ship docked, the starboard head mooring line parted and struck plaintiff, causing him to sustain injuries to his right leg. Plaintiff settled with MTL for $200,000 in June, 1985 and is no longer an active party.

MTL, having notified Norshipco of plaintiff Garza's claim in May 1985, commenced this third-party action in June, 1985 and now seeks indemnification and legal fees from Norshipco, contending that the mooring line parted because it had been damaged by Norshipco employees during the repairs to the vessel at Norshipco's shipyard. MTL's claim is based on a September 1, 1983 contract between the parties that provided Norshipco would perform certain repairs to the MARINE CHEMIST. Norshipco denied liability and points to "red-letter" clauses contained in the written agreement which it contends relieves it from all liability.

The "red-letter" clause upon which the instant motion for summary judgment is based reads as follows:

> We shall be discharged from all liability for defective workmanship or material or for loss or damage, unless the same is discovered prior to and claim in writing made to us within sixty (60) days and litigation is commenced within one year after our work has ceased for whatever reason or has been completed, or the vessel has been redelivered, whichever first occurs.

A reproduction of the entire Terms and Conditions document is attached hereto as Appendix A.

## THE LAW

### 1. *Summary Judgment*

FRCP Rule 56 provides for summary judgment where "there is no genuine issue

as to any material fact [and] the moving party is entitled to a judgment as a matter of law."

Because summary judgment is such a drastic remedy, we should proceed with caution lest we improperly deprive MTL of its day in court. Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 2716 (hereinafter *Wright*). Accordingly, we may grant summary judgment only when "the requirements of [Rule 56] have clearly been met." *United States v. Bosurgi*, 530 F.2d 1105, 1110 (2d Cir.1976). Our function here is to decide whether there remain any triable issues of fact. *Id.* In doing so we must " 'resolve all ambiguities and draw all reasonable inferences in favor of [MTL] with the burden on [Norshipco] to demonstrate the absence of any material factual issue genuinely in dispute.' " *Id.* (quoting *Heyman v. Commerce and Industry Insurance Company*, 524 F.2d 1317, 1320 (2d Cir.1975)).

The only potentially triable issue of fact for purposes of the instant motion is whether the "red-letter" clause in the contract is applicable to this third-party action for indemnity.

*2. The parole evidence rule and summary judgment*

■ The parole evidence rule often precludes the presentation of factual matters that appear to raise triable issues, thus making summary judgment appropriate in those cases. 6– Pt. 2 Moore's Federal Practice ¶ 56.17[43] (hereinafter *Moore*). We must examine the "red-letter" clause to determine whether it is sufficiently ambiguous to overcome the parole evidence rule and thereby permit proof of the subjective intent of the parties. *Tokio Marine & Fire Ins. v. McDonnell Douglas Corp.*, 617 F.2d 936, 940 (2d Cir.1980). A mere assertion by one of the parties that the language is ambiguous or evinces a divergence of subjective intent between the parties is not enough to prevent summary judgment. *Wright* at § 2730.1. This is a question of law properly decided by this Court. *Tokio Marine*, 617 F.2d at 940.

If we decide that the "red-letter" clause unambiguously time-bars the instant action and that no triable issue of fact remains, we grant summary judgment. *Id.* If, on the other hand, we find the terms of the contract ambiguous, we must deny summary judgment. *Moore* ¶ 56.17[43].

## DISCUSSION

MTL does not dispute that the time limitations contained within the "red-letter" clause would have been exceeded and the action contractually time-barred had the limitations provision been applicable to the instant claim. Rather, MTL opposes the motion on the ground that this is a personal injury claim excepted from the exculpatory language quoted above. MTL has raised three arguments in support of this position.

The crux of MTL's first argument is that the limitations clause is embedded within a portion of the document that seems to deal with defective workmanship or materials. MTL, assuming that to be the case, urges us to conclude that the limitation pertains only to actions arising from defective workmanship or material and not to personal injury claims.

This argument is grounded in the traditional contract law rule of construction that ambiguous language is to be construed against the draftsman. *Edward Leasing Corp. v. Uhlig Associates, Inc.*, 785 F.2d 877, 889 (11th Cir.1986). MTL has attempted to resolve the perceived ambiguity by including with its memorandum opposing the motion an enlarged copy of the Terms and Conditions document which contains the limitations provision. MTL marked certain passages and encircled certain phrases in support of its interpretation of the contract.

■ We must point out, as Judge Weinfeld did, that the principle "only applies [where] the contract language is ambiguous—where it is susceptible of two reasonable and practical interpretations." *American Export Isbrandtsen Lines, Inc., as the owners of the S/S Export Ambassador v. United States*, 390 F.Supp. 63, 66 (S.D. N.Y.1975) (indemnity action by shipping

company against United States dismissed). The limitations clause at issue discharges Norshipco from "all liability for defective workmanship [or] *for loss or damage."* (emphasis ours). The emphasized language is clearly broad enough on its face to include this third-party action. MTL has failed to explain why "all liability ... for loss or damage" should not be read to include this third-party action, whether it be labeled one for personal injury or for indemnity. The clause is "broadly inclusive" and there is no substance to MTL's attempt to limit it to claims arising from defective workmanship or materials. *Tokio Marine,* 617 F.2d at 940 (waiver of liability provision in purchase contract for airplane upheld). MTL's contention can only be upheld if the words "or for loss or damage" are omitted from the clause. It would be a "distortion of language" to read into this clause an exception for personal injury claims. *American Export,* 390 F.Supp. at 65. Since we find the contractual language clear and unequivocal, we must disregard the structure MTL seeks to impose on the contract at this late date. *Id.* at n. 6.

■ MTL next argues that Norshipco has, in effect, excepted personal injury claims from the "red-letter" clauses by the following provision:

> We do not agree to the accident, indemnity, and insurance provisions, if any, contained in your invitation or specifications, relating to liability for death or personal injury, and in such cases we accept only such liability as is imposed upon us by law.

MTL interprets this provision as an acceptance by Norshipco of amenability to personal injury actions for the entire statutory limitations period. Our close reading of the Terms and Conditions document reveals that MTL's reading of this provision is flawed. It is simply a rejection by Norshipco of any "accident, indemnity, and insurance provisions" contained within MTL's specifications. There is nothing in the language or structure of this provision indicating that the parties intended this provision to affect the limitations period set by the parties elsewhere in the contract.

■ Furthermore, Norshipco responds that since this is an action sounding in indemnity rather than personal injury, MTL's personal injury approach is irrelevant. This is an interesting argument having a great deal of appeal. However, we cannot say that "relating to liability for death or personal injury" clearly excludes actions for indemnity flowing from personal injury actions. For purposes of our summary judgment analysis we must therefore resolve this question in MTL's favor and assume that this third-party indemnity action is covered by the above provision. *Bosurgi,* 530 F.2d at 1110. The question remains what liability will the law impose upon Norshipco?

■ We do not doubt the validity of "red-letter" clauses. So long as no overreaching is found, such clauses are enforced because businessmen can bargain over them and negotiate prices accordingly. *See Edward Leasing,* 785 F.2d at 888 and cases cited therein. Where two equal bargainers such as MTL and Norshipco agree to an apportionment of liabilities as between themselves, they should be held to the terms of their bargain. *Tokio Marine,* 617 F.2d at 941. That MTL and Norshipco bargained in this fashion is made evident by the following provision from the contract:

> Different or more extensive liabilities will be accepted if an agreement in writing stating the nature and extent thereof is entered into before the vessel enters our yard or work is commenced, whichever first occurs, and if the price is adjusted to include the cost of appropriate additional insurance.

MTL has offered no proof of overreaching by Norshipco. The law will therefore impose no greater liability than that freely negotiated by the parties.

■ MTL lastly argues that certain limitations provisions found in Norshipco's Shiprepairer's liability policy clarify any ambiguity in the "red-letter" clauses at issue. There appears to be no merit to this argument. First of all, MTL does not claim to

be a party to Norshipco's insurance agreement. We find no language within the Terms and Conditions document indicating that the parties intended to incorporate the limitations provisions of the insurance agreement into the ship repair contract. Nor has MTL convinced us that we would do so for any other reason. Furthermore, since we find the limitations language clear and unequivocal, we are precluded by the parole evidence rule from seeking guidance from without the four corners of the ship repair contract. *Moore*, at ¶ 56.17[43].

## CONCLUSION

In short, MTL and Norshipco negotiated a clear, unambiguous, valid and enforceable liability limitations provision. There is nothing in the pleadings and papers filed to date that convinces us that MTL should not be held to the terms of its agreement. There remain no triable issues of fact.

Based upon the foregoing findings of fact and conclusions of law and all the pleadings and other papers filed with this Court to date, we are therefore compelled to grant Norshipco's motion for summary judgment.

SO ORDERED.

## EXHIBIT A

### *NORFOLK SHIPBUILDING & DRY-DOCK CORPORATION*

### P.O. BOX 2100

### *NORFOLK, VIRGINIA 23501*

### **TERMS AND CONDITIONS**

Our contracts for furnishing ship repairs, parts and services are solely on the basis of the insured limited liabilities set forth below. We shall not be liable in respect to any one vessel, directly or indirectly, in contract, tort or otherwise, to its owners charterers, underwriters or other party in interest for any damages to such vessel and to its appurtenances, or for any consequence thereof, unless such damage is caused solely by our negligence, and in no event shall our aggregate liability under this contract exceed the sum of $300,000.00

or the value of the vessel, whichever figure is the lesser. The customer agrees to indemnify, defend and hold us harmless with respect to all liabilities to all parties in interest exceeding the amount here stated, Unless otherwise stated, all tenders are subject to immediate acceptance. We shall not be liable for any loss, damage, delay caused by strikes, labor difficulties, accidents, delays in delivery of materials, or causes of any kind beyond our control. For payment of any work done or materials furnished hereunder, whether authorized orally, by letter, or written contract we look to both vessel and owner.

In case of defective workmanship or material, whether latent or otherwise, or for damage to any vessel or for any loss sustained by its owners or other parties in interest, directly or indirectly in contract, tort or otherwise, unless the same is caused solely by the negligence of our own employees, our liability is limited strictly to the cost of repair, correction or replacement thereof.

**In no event shall we be liable for any consequential damage including but without limitation, for faulty or negligent design or manufacture, delay, loss of revenue, detention, demurrage, tug expense, pilotage crew wages, salvage or loss of use.**

We shall be discharged from all liability for *defective workmanship* or material or for loss or damage, unless the same is discovered prior to and claim in writing, made to *us within sixty (60) days and litigation is commenced within one year* after our work has ceased for whatever reason or has been completed, or the vessel has been redelivered, whichever first occurs. We shall not be liable for any personal injury, including death, or for damage to property of third parties, unless the same is a result of the sole negligence of our employees. The vessel, its owners, and all parties in interest, shall indemnify and hold harmless from all liability arising under any air or water quality statute or regulation unless the liability shall arise from the sole negligence of our own employees. Owners, or other parties in interest, warrant that a

valid and current Federal Maritime Commission Certificate of Financial Responsibility (Water Pollution) shall be kept in force at all times while the vessel is on the premises of Norshipco, and on vessels situate elsewhere to which we are furnishing repairs, parts and services. We do not agree to the accident, indemnity, and insurance provisions, if any, contained in your invitation or certifications, relating to liability for death or personal injury, *and in such cases we accept only such liability as is imposed upon us* by law. In no event shall we be liable for the cost of defense, including attorney's fees, of any action whether committed by our employees, our contractors' employees, or others against the vessel, its owners, agents, charterers or underwriters.

**The foregoing is in lieu of all warranties and liabilities, whether statutory, expressed or implied, including, but not limited to, warranties of merchantability, fitness for a particular purpose and workmanlike service.**

Different or more extensive liabilities will be accepted if an agreement in writing stating the nature and extent thereof entered into before the vessel enters our yard or work is commenced, whichever first occurs, and if the price is adjusted to include the cost of appropriate additional insurance.

Please note that our terms of payment are net on receipt of invoice, 1% per month to be added to invoice if not paid within thirty (30) days of presentation or mailing of same.

**Payment terms different from above shall be agreed upon before commencement of work. Nothing herein shall be deemed to constitute a waiver of our maritime lien. Invalidity of any one or more provisions of this contract shall not affect nor impair the remaining provisions, this contract may not be changed orally.**

The terms and conditions stated above shall be deemed to have been accepted upon arrival of the vessel at our yard or upon commencement of the work by us in any other location.