**Ricardo GARZA, Plaintiff,**

v.

**MARINE TRANSPORT LINES, INC., Defendant and Third–Party Plaintiff–Appellant,**

v.

**NORFOLK SHIPBUILDING & DRY-DOCK CORPORATION, Third–Party Defendant–Appellee.**

**No. 1361, Docket 88–7246.**

United States Court of Appeals, Second Circuit.

Argued Aug. 17, 1988.
Decided Nov. 3, 1988.

Healy & Baillie, New York City (Thomas L. Rohrer, of counsel) for defendant and third-party plaintiff-appellant.

Frederick W. Meeker, New York City, for third-party defendant-appellee.

Before WINTER and MINER, Circuit Judges, and BILLINGS, District Judge.*

BILLINGS, District Judge:

Defendant and third-party plaintiff-appellant Marine Transport Lines, Inc., ("MTL") seeks review of an order of the United States District Court for the Southern District of New York (Cooper, J.) granting summary judgment to third-party defendant-appellee Norfolk Shipbuilding & Drydock Corporation ("Norshipco") on MTL's third-party claim for indemnification and legal fees. The district court granted summary judgment and dismissed the third-party action on the ground that it was time-barred by the terms of the agreement between MTL and Norshipco. *Garza v. Marine Transport Lines, Inc.*, 680 F.Supp. 624 (S.D.N.Y.1988).

MTL argues on this appeal that the district court erred in concluding that the contract clauses were unambiguous, and that because of that error, the court improperly excluded parol evidence relevant to the meaning of the clauses. MTL also requests that this Court, upon examination of the parol offered, rule upon the meaning of the contract clauses in dispute. We agree that the clauses are ambiguous and therefore reverse and remand for reconsideration. We do not pass on the proper interpretation of the disputed contract clauses because we believe the district court should have the first opportunity to assess these clauses in light of the parol evidence introduced.

## BACKGROUND

Plaintiff Ricardo Garza commenced this suit in September, 1984, to recover damages for personal injuries sustained while a

---

* Hon. Franklin S. Billings, Jr. U.S. District Judge for the District of Vermont, sitting by designa- tion.

crew member on the MARINE CHEMIST, a vessel owned and operated by MTL. The MARINE CHEMIST was repaired by Norshipco pursuant to contract during the period between October 11 and November 10, 1983. On November 17, the second time the ship was docked after the repairs, the starboard head mooring line parted and struck plaintiff, causing serious injuries to his right leg. Plaintiff settled with MTL for $200,000 in June, 1985, and is no longer an active party.

Sometime after the accident, it was determined that the synthetic mooring line that hit Garza had been damaged at the location of the break by contact with hot molten metal. MTL claims that this damage was caused during the repair period at the Norshipco Yard, presumably as a result of repairs involving burning and welding in the vicinity of the mooring line. MTL notified Norshipco of Garza's claim in May, 1985, and commenced this third-party action against Norshipco in June, 1985, pursuant to leave of the district court. MTL contends that the mooring line parted because it had been damaged by Norshipco employees while the MARINE CHEMIST was at Norshipco's shipyard. Norshipco denies liability on the basis of certain so-called "red letter clauses" contained in the written agreement between the parties.

The contract for repair of the MARINE CHEMIST consists of MTL's invitation to bid with repair specifications dated July 25, 1983, Norshipco's bid dated August 26, 1983, and MTL's letter of September 1, 1983, awarding the job to Norshipco. The repair specifications do not indicate that any work was to be performed on the mooring line involved in the accident, nor was that line purchased from Norshipco.

Norshipco's bid contained several exculpatory "red-letter" clauses which are common in maritime repair contracts. The red-

letter clause upon which Norshipco grounded the instant summary judgment motion reads as follows:

> We shall be discharged from all liability for defective workmanship or material or for loss or damage, unless the same is discovered prior to and claim in writing made to us within sixty (60) days and litigation is commenced within one year after our work has ceased for whatever reason or has been completed, or the vessel has been redelivered, whichever first occurs.[1]

The district court agreed with Norshipco that the clause unambiguously imposed a sixty-day limitation period on MTL's indemnification claim, and dismissed the third-party action because written notice had not been provided within the time required by the clause. The district court refused to consider evidence from "without the four corners of the ship repair contract" as to the meaning or application of the clause. 680 F.Supp. at 628. MTL argues on this appeal, as it did in the court below, that the sixty-day limitation clause did not apply to claims for personal injury. Rather, MTL urges, a different red-letter clause was applicable:

> We do not agree to the accident, indemnity, and insurance provisions, if any, contained in your invitation or specifications, relating to liability for death or personal injury, and in such cases we accept only such liability as is imposed upon us by law.

MTL argues that under this clause, the proper limitations period for actions grounded in personal injury would be that "imposed upon us by law", not the sixty-day period. At the very least, MTL argues, the meaning and application of the contract clauses are ambiguous and parol should have been allowed to determine the application of the clauses.[2] We agree.

1. The full text of Norshipco's terms and conditions is set forth as an appendix to the district court's opinion. See *Garza v. Marine Transport Lines, Inc.,* 680 F.Supp. 624, 628–29 (S.D.N.Y. 1988).

2. MTL argues that the red-letter clauses contained in Norshipco's bid were based, at least in

part, on Norshipco's liability insurance policy, and that the policy should be considered in determining the meaning of the clauses. In addition, MTL offers other relevant extrinsic evidence. It claims that the reason for the sixty-day notice requirement on claims for defective workmanship and materials was that all such claims would be discussed at a customary final

## DISCUSSION

### 1. *Summary Judgment*

Summary judgment may be granted only if the moving party can show that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ. P. 56(c). Summary judgment is a drastic procedural weapon because "its prophylactic function, when exercised, cuts off a party's right to present his case to the jury." *Donnelly v. Guion*, 467 F.2d 290, 291 (2d Cir.1972). Thus, when the court considers a summary judgment motion, it must draw all reasonable inferences and resolve all ambiguities in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). The burden is on the moving party to demonstrate the lack of genuine dispute on any material factual issue. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed. 2d 142 (1970); *Heyman v. Commerce and Industry Insurance Co.*, 524 F.2d 1317, 1320 (2d Cir.1975).

In this case, the district court concluded that no triable issue of material fact remained because the parol evidence rule barred extrinsic evidence concerning the meaning of the clauses. 680 F.Supp. at 626. Although the district court was correct in proceeding via the summary judgment route once it determined that the clauses were unambiguous, *see Tokio Marine & Fire Insurance Co. v. McDonnell Douglas Corp.*, 617 F.2d 936, 940 (2d Cir. 1980), we disagree with the court's determination that the clauses were unambiguous. We believe that the red-letter clauses are ambiguous as a matter of law, and that both parties are entitled to present evidence outside the four corners of the agreement that bears on the meaning and application of the several clauses. "Where contractual language is susceptible of at least two fairly reasonable interpretations, this presents a triable issue of fact, and summary judgment [is] improper." *Aetna Casualty & Surety Co. v. Giesow*, 412 F.2d 468, 471 (2d Cir.1969); *accord Rothenberg v. Lincoln Farm Camp, Inc.*, 755 F.2d 1017, 1019 (2d Cir.1985); *Heyman*, 524 F.2d at 1320.

### 2. *The Parol Evidence Rule*

■ The parol evidence rule, a substantive rule of contract law and not a rule of evidence,[3] is generally stated as follows:

When two parties have made a contract and have expressed it in a writing to which they have both assented as the complete and accurate integration of that contract, evidence, whether parol or otherwise, of antecedent understandings and negotiations will not be admitted for the purpose of varying or contradicting the writing.

3 A. Corbin, *Contracts* § 573, at 357 (1960). All state and federal jurisdictions accept this basic statement of the rule, although interpretations vary. *Battery Steamship Corp. v. Refineria Panama, S.A.*, 513 F.2d 735, 738 (2d Cir.1975). In this case, principles of general maritime contract law govern. *See id.* at 738–39.

The parol evidence rule aims to ensure some measure of stability in commercial relations. The purpose and essence of the rule is to avoid the possibility that fraud might be perpetrated if testimony as to subjective intent could be substituted for the plain meaning of a contract. In the absence of ambiguity, the effect of admitting extrinsic evidence would be to allow

---

meeting between the parties. Personal injury claims, it argues, were not customarily discussed in this way, and not subject to the sixty-day provision. It also points to the fact that in a prior motion for summary judgment, Norshipco did not raise the limitations issue but relied wholly on two other provisions of the contract. Only after that motion had been denied, and on the eve of trial, did Norshipco rely on the limitations clause, at that time at the suggestion of the court. MTL argues that this sequence of events indicates that the contract is at least ambiguous, and that even Norshipco did not understand that the sixty-day limit would apply to MTL's claim until the district court suggested it.

**3.** *Zell v. American Seating Co.*, 138 F.2d 641, 643 (2d Cir.1943), *rev'd on other grounds*, 322 U.S. 709, 64 S.Ct. 1053, 88 L.Ed. 1552 (1944); *Eskimo Pie Corp. v. Whitelawn Dairies, Inc.*, 284 F.Supp. 987 (S.D.N.Y.1968); 3 A. Corbin, *Contracts*, §§ 572B–573 (1960 and Supp.1971).

one party "to substitute his view of his obligations for those clearly stated." *Eskimo Pie Corp. v. Whitelawn Dairies, Inc.*, 284 F.Supp. 987, 994 (S.D.N.Y.1968). However, when the obligations are not clearly stated—when they are ambiguous—the parol evidence rule does not prevent the introduction of extrinsic evidence to aid in interpretation of the contract. The rule excludes "only evidence of prior understandings and negotiations which contradicts the unambiguous meaning of a writing which *completely* and *accurately* integrates the agreement of the parties." *Battery Steamship*, 513 F.2d at 739–40 (emphasis in original). When extrinsic evidence is considered for the purpose of *interpretation*, the parol evidence rule is inoperative. *Heyman*, 524 F.2d at 1320 n. 2. Then, the evidence is not considered to vary or contradict the terms of an integrated agreement; rather, the parol is used to determine what the terms of the agreement are. 3 A. Corbin, *supra*, § 579, at 421–22.[4]

### 3. *The Ambiguities*

■ To begin, we note that the determination of whether a contract term is ambiguous—and thus whether parol may be considered—is a threshold question of law for the court. *Walk–In Medical Centers, Inc. v. Breuer Capital Corp.*, 818 F.2d 260, 263 (2d Cir.1987); *Tokio Marine*, 617 F.2d at 940. In reviewing Judge Cooper's conclusion, we are not constrained by the "clearly erroneous" standard. We review his determination *de novo*. *See Walk–In Medical*, 818 F.2d at 264. Further, the record must be read in the light most favorable to the party against whom summary judgment was granted. *City of Yonkers v. Otis Elevator Co.*, 844 F.2d 42, 45 (2d Cir.1988).

■■ A word or phrase is ambiguous when it is capable of more than a single meaning " 'when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.' " *Walk–In Medical*, 818 F.2d at 263 (quoting *Eskimo Pie Corp. v. Whitelawn Dairies, Inc.*, 284 F.Supp. 987, 994 (S.D.N.Y.1968)). We agree with the district court that a "mere assertion" by one of the parties that a clause is ambiguous would not prevent summary judgment. 680 F.Supp. at 626. Here, however, MTL has pointed to several ambiguities which, viewed objectively and in the context of the entire agreement, are sufficient to require the consideration of extrinsic evidence. Moreover, the district court's interpretation of the contract—the interpretation urged by appellee here—would have the effect of rendering at least one clause superfluous or meaningless. Although it is possible that such effect was the parties' intent upon drafting and agreeing to the contract, such interpretation is not preferred and will be avoided if possible. *Rothenberg v. Lincoln Farm Camp, Inc.*, 755 F.2d 1017, 1019 (2d Cir.1985) (an interpretation "that gives a reasonable and effective meaning to all the terms of a contract is generally preferred to one that leaves a part unreasonable or of no effect"). In the present case, it is necessary to look beyond the writings to determine if the parties intended their contract to have a meaning that renders at least one clause surplusage.

■ The primary ambiguity in the agreement between MTL and Norshipco is whether the sixty-day limitation period ap-

**4.** Although it may appear that the language of some agreements is so clear and plain that no doubt can be raised about its meaning, in fact, extrinsic evidence may support an unusual interpretation in some cases. "A word is not a crystal, transparent and unchanged, it is the skin of a living thought and may vary greatly in color and content according to the circumstances and the time in which it is used." *Towne v. Eisner*, 245 U.S. 418, 425, 38 S.Ct. 158, 159, 62 L.Ed. 372 (1918) (Holmes, J.). For example, in

*Thorington v. Smith*, 75 U.S. (8 Wall.) 1, 12–14, 19 L.Ed. 361 (1868) the Court allowed extrinsic evidence that the word "dollars" did not have its ordinary meaning, "in order that justice be done between the parties." *Id.* at 14. There is nothing in the law of contracts that prevents the parties from ascribing an uncommon meaning to their words. "No contract should ever be interpreted and enforced with a meaning that neither party gave it." 3 A. Corbin, *supra*, § 572B, at 198 (Supp.1971).

plied to personal injury claims. Specifically, the issue is whether the phrase "or loss or damage" in the clause "[w]e shall be discharged from all liability for defective workmanship or material or for loss or damage" refers to liability for death or personal injury, as the district court found it unambiguously did, or whether it refers to *"damage* to any vessel" or *"loss* sustained by its owners" as claimed by MTL. We do not doubt that the phrase "or loss or damage" *could* encompass personal injury. Here, however, the meaning is far from clear. The phrase appears in a part of the contract that deals with "defective workmanship or material" where the word "damage" is used to refer to damage to "any vessel" and the word "loss" is used to refer to "any loss sustained by its owners." Personal injury is unequivocally taken up in a subsequent part of the contract, where the phrase "personal injury, including death" is used explicitly. In that part, the "sole negligence" clause,[5] earlier inserted in relation to defective workmanship, is repeated. This subsequent part goes on to state that Norshipco does not agree to any accident, indemnity or insurance provisions that may have been submitted with the invitation to bid, but accepts "only such liability as is imposed upon us by law."

Because of the repetition of the "sole negligence" provision and the grouping of the clauses, the contract as a whole is reasonably susceptible to an interpretation in which one part of the terms and conditions applies exclusively to defective workmanship or material, and another part applies exclusively to personal injury or death. On this interpretation, the sixty-day limitation period would not apply to the present case, which is an indemnity action founded on personal injury. Such a reading is not compelled by the language or layout of the contract but it is far from impossible; in fact, it is the only reading of the terms and conditions that does not render the second "sole negligence" clause superfluous.

Given the structure of the terms and conditions, we conclude that the phrase "or loss or damage" is capable of more than one meaning. The clause may be "broadly inclusive" as the language clearly allows and as the district court found; or, the clause may be limited to defective workmanship or materials, as a structural reading of the contract suggests. Because of this ambiguity, extrinsic evidence bearing on the intentions of the parties must be examined.

## CONCLUSION

In concluding, we wish to emphasize that we do not purport to determine the meaning or application of the sixty-day limitation clause contained in Norshipco's terms and conditions, or, for that matter, the meaning or application of other maritime red-letter clauses, as they vary widely. *See, e.g., M/V American Queen v. San Diego Marine Const. Corp.*, 708 F.2d 1483, 1487 (9th Cir.1983) (sixty-day notice provision); *Hudson Waterways Corp. v. Coastal Marine Service, Inc.*, 436 F.Supp. 597, 603–05 (E.D. Tex.1977) (complete absolution of liability). Nor do we pass in any way on the merits of MTL's indemnification claim. We decide only that the red-letter clauses contained in this contract, taken in the context of the agreement as a whole, and viewed in the light most favorable to appellant, are susceptible to more than a single meaning.

The decision of the district court is reversed and the matter is remanded for further proceedings not inconsistent with this opinion.

---

5. The sole negligence provision is another "red letter" clause which relieves Norshipco of liability unless damage "is a result of the sole negligence of our employees."