DENALI SEAFOODS, INC., an Alaskan Corporation, Plaintiff,

v.

WESTERN PIONEER, INC., a corporation, Defendant.

No. C79–1338B.

United States District Court, W. D. Washington.

May 1, 1980.

James H. Bauer of Bergman, Bauer & Freise, Seattle, Wash., for plaintiff.

Robert W. Nolting of LeGros, Buchanan, Paul & Madden, Seattle, Wash., for defendant.

## ORDER GRANTING PARTIAL SUMMARY JUDGMENT

BEEKS, Senior District Judge.

This action involves a demise charter of M/V DENALI by Western Pioneer, Inc. (Western) from Denali Seafoods, Inc. (Denali) for the purpose of transporting frozen crab from Alaska to Seattle. The charter party, executed by the parties on September 20, 1979, is a fourteen page, single-spaced document which contains detailed provisions expectable in a charter of this type, and concludes with a comprehensive integration clause set forth under a subhead entitled "TOTALITY OF AGREEMENT."

The hire clause contained therein unambiguously states that "[t]he rate for the active charter will be $3,000 per day, a sixty (60) day charter hire being guaranteed by [Western]." The hire was to be paid in four installments, $60,000 on September 25, 1979, and three equal payments of $40,000 due on October 15, November 15 and 30, with interest at the rate of 12% per annum if in default.

During the charter term, DENALI grounded at Bold Cape, Alaska. After temporary repairs were made, Western returned the vessel to Denali, but refused to make the last three hire payments or pay for the damage caused by the grounding. Denali then commenced this action, and now moves for summary judgment with respect to the guaranteed hire.

In opposing the motion, Western contends (1) the written document does not express the complete agreement of the parties with respect to hire, and (2) the grounding amounts to commercial frustration of the contract. Western seeks to show by parol evidence that it had the option to terminate the charter if the Alaska crab season ended early. Notwithstanding the specific guaranteed hire clause, Western's president and vice-president, Amigo and Max Soriano respectively, state by affidavit that if the charter terminated early, Western only had to pay for the term used and not the sixty day guaranteed period.

■ Construction of a charter party, a maritime contract, is governed by maritime contract law. *Kossick v. United Fruit Co.*, 365 U.S. 731, 81 S.Ct. 886, 6 L.Ed.2d 56 (1961). Under such law, parol evidence will not be admitted to vary or contradict a written document if the parties intended the writing to be their final and complete expression. 3 *Corbin on Contracts* § 573 (1960). Here, it is clear the parties so intended.

At the meeting on September 20, 1979, Western was represented by its president and vice-president, an attorney, and Denali by two of its officers and its attorney, Milton Soriano. (Curiously, Denali's attorney is a shareholder in Western). Western's officers admit that the parties had been negotiating for a substantial period of time, and that the September 20 meeting was for the express purpose of reviewing the proposed charter party and arriving at a final agreement. The parties rewrote several provisions to incorporate changes, initialed each page, and signed the document. This proof, offered by Western, supports the fact that the parties intended the written document to be the complete expression of their agreement.

■ Importantly, the integration clause contained therein recites:

It is agreed by the parties that neither has, nor is now, relying on any collateral, prior or contemporaneous agreements; written or oral, assurances, representations or warranty of any kind or nature regarding . . . rights and responsibilities herein described. No modification, waiver, or discharge of any term or provision of this instrument shall be implied in law, admiralty or equity, nor shall any alteration, modification, or acquittance of any such term or provision be effective for any purpose unless in writing signed by or upon behalf of the party charged therewith.

Such a clause strongly indicates that the parties intended the writing to be final. *See Golden Gate Acceptance Corp. v. General Motors Corp.*, 597 F.2d 676 (9th Cir. 1979). In that case, the Court, in reference to an integration clause, stated "[g]iven [such] language, the contract must be considered 'integrated' and, because the parties have agreed that the written instrument is the exclusive and final embodiment of their contract, antecedent understandings and parol evidence are not admissible to alter its terms." *Id.* at 680.

■ Although each of the fourteen pages is initialed by the parties, Western, in support of its position of non-finality, contends that its officers did not read it until after the grounding. In the absence of fraud the rule is, however, that "one who signs a contract cannot avoid it on the ground he did not read it or that he took someone else's word as to what it contained." *Chandler v. Aero Mayflower Transit Co., Inc.*, 374 F.2d 129, 136 (4th Cir. 1967).

Western relies on *Battery Steamship Corp. v. Refineria Panama, S. A.*, 513 F.2d 735 (2d Cir. 1975). *Battery*, however, is inapposite. There, it was not clear whether the parties intended the several written documents executed by them to be integrated, and it was necessary to hear parol evidence to resolve the issue. In the case at bar, the intention of the parties is clear and unambiguous.

Therefore, parol evidence is inadmissible to vary the terms of the contract.

The next issue is whether there was a commercial frustration of the charter.

■ Commercial frustration requires (1) an unexpected contingency; (2) no allocation of risk either express or implied; and (3) commercial impracticability of performance. *Transatlantic Financing Corp. v. U. S.*, 363 F.2d 312 (D.C. Cir. 1966). Here, such requirements have not been established.

■ A grounding is not an unexpected contingency on voyages between Alaska and Seattle. The charter party contains clauses covering redelivery of the vessel, maintenance, repair, damage, and insurance which both expressly and impliedly indicate the parties allocated the risk of such grounding. Finally, there is no commercial impracticability as such term is commonly

used and understood. As stated by the Court of Appeals to which I am accountable, "each party to a contract undertakes certain risks; otherwise a party could escape liability for every 'bad bargain' on the ground that the contractual purpose was frustrated." *U. S. v. Buffalo Coal Mining Co.*, 345 F.2d 517, 518 (9th Cir. 1965).

Accordingly, Denali's motion for partial summary judgment is granted.