In re **INTEGRATED RESOURCES, INC.,** Debtor.

**CANADIAN IMPERIAL BANK OF COMMERCE (NEW YORK), The Chase Manhattan Bank, N.A. and Israel Discount Bank of New York, Plaintiffs,**

v.

**AIRCRAFT INCOME PARTNERS II, L.P., and First Security Bank of Utah, N.A., as Trustee, Defendants,**

and

**Integrated Resources, Inc., Intervenor–Defendant.**

**Bankruptcy No. 90–B–10411 (CB). Adv. No. 90–6034A.**

United States Bankruptcy Court, S.D. New York.

Jan. 17, 1991.

Sidley & Austin by Richard Epling, New York City, for plaintiffs Canadian Imperial Bank of Commerce (New York), The Chase Manhattan Bank, N.A. and Israel Discount Bank of New York.

Willkie Farr & Gallagher by Jeanne M. Luboja, Mitchel H. Ochs and Alan Lipkin, New York City, for defendants Aircraft Income Partners II, L.P. and Integrated Resources, Inc.

## DECISION ON MOTIONS FOR SUMMARY JUDGMENT REGARDING CERTAIN LOAN AGREEMENTS BETWEEN PLAINTIFFS AND DEFENDANTS

CORNELIUS BLACKSHEAR,
Bankruptcy Judge.

I. *Factual Background*

A. AIP Commences a Public Offering of Limited Partnership Units

By Prospectus, dated May 1, 1989, AIP[1] commenced a public offering of up to $200,-

---

1. AIP is a Delaware limited partnership which was formed on February 2, 1989, for the pur-

000,000 of limited partnership units. According to the Prospectus, "[t]he General Partner reserve[d] the right, in its sole discretion, to terminate the offering for any reason whatsoever prior to the sale of the maximum number of Units." Prospectus at 6.

Under the terms of the offering, cash proceeds from potential investors would be held in escrow pending admission of limited partners to the Partnership. *See* Prospectus at 6. The Prospectus further provided that in the event the offering was terminated prior to the admission of limited partners, cash payments received from potential investors in escrow would be promptly returned by the General Partner together with interest earned, if any. *See id.*

The Prospectus further provided that prior to the receipt of capital contributions from limited partners, the Partnership could, under certain circumstances, incur short-term borrowings from third parties to purchase Partnership assets. *See id.* at 64. In that connection, such borrowings could only be incurred if: (a) they were in an aggregate amount of not more than $10 million; (b) the indebtedness was unsecured; (c) the anticipated rent to be received by the Partnership from Partnership assets would exceed the financing costs incurred by the Partnership; and (d) such loans were repayable at any time. *See id.*

### B. AIP Borrows Funds from the Banks to Purchase Partnership Assets

In accordance with the terms of the Prospectus, on or about May 26, 1989, AIP arranged for an extension of credit in the principal amount of $10,000,000 from each of Canadian Imperial Bank of Commerce, The Chase Manhattan Bank, N.A., and Israel Discount Bank of New York (collectively "Plaintiffs," "Banks" or "Bank Group") on an unsecured basis. These borrowings were incurred in connection with AIP's acquisition of a 52% joint venture interest in a Boeing 727–200 Advanced aircraft, a Pratt & Whitney JT8D–9A aircraft engine and a Pratt & Whitney JT8D–17 aircraft engine.

With respect to the extension of these loans, AIP executed and delivered promissory notes to the Banks pursuant to which it would agree to pay, on demand, the outstanding principal balance of loans extended by the Banks. The standard form promissory notes delivered by AIP and accepted by the Banks contained provisions with broad restrictions on the recourse available to them for repayment from AIP in the event of a payment default by AIP.[2]

In addition, at the time AIP executed the limited partnership promissory notes—and in consideration of the loans to AIP—the Banks also required that Integrated provide guarantees with respect to the repayment of any loans extended by the Banks

---

pose of syndicating on a "best efforts" basis up to $200,000,000 of limited partnership units, and for the purposes of investing the proceeds of the public offering in a diversified portfolio of aircraft and aircraft parts, including primarily all of or an interest in certain used commercial jet aircraft as well as engines and other aircraft parts. The general partner of AIP is Integrated Aircraft Fund Management L.P., the general partner of which is Integrated Aircraft Fund Management Corp., a wholly-owned subsidiary of Integrated.

**2.** Specifically, the limited partnership promissory notes provided, in pertinent part:

No recourse shall be had for payment of any principal hereof or interest hereon, if any, or for any claim based hereon or otherwise with respect hereto (i) against any general or limit-

ed partner of Borrower whether heretofore or hereafter admitted as a partner of Borrower, or any partner of any such partner, or any officer, director or shareholder of any corporate partner of Borrower, except that each general and limited partner of Borrower (and any general partner thereof) shall be liable for the unpaid portion of such partner's capital contributions to Borrower and any notes evidencing the same (the "Partner's Note"), issued by such partner to Borrower and except that Bank shall have full recourse to any collateral applicable to the Partner's Note upon the entire principal sum of such Partner's Note becoming due and payable in accordance with the provisions thereof and (ii) against any property or assets owned, leased, acquired or held by Borrower other than the capital contributions of Borrower's partners. *See* AIP Promissory Notes.

to AIP.[3] Under the terms of the Integrated guarantees, Integrated guaranteed "absolutely and unconditionally, to the Banks the payment of all liabilities, obligations and indebtedness ... [of AIP]." *See* Integrated Guarantees.

### C. Integrated Declares a Moratorium on Repayment of Its Debt

On or about June 15, 1989, as a consequence of financial difficulties that Integrated had been experiencing, Integrated declared a moratorium on further payment of the principal and interest on Integrated's more than $1.8 billion debt. Included were the approximately $280 million loan obligations of Integrated-sponsored partnerships which obligations also were the subject of Integrated guarantees, including, specifically, the loans by the Banks to AIP.

### D. AIP Suspends Sales of Partnership Units

As a result of the uncertainty created by Integrated's announcement of its financial difficulties and the possible effects of Integrated's financial problems on the continued ability of certain Integrated-sponsored partnerships, including AIP, to complete offerings which had not yet progressed to a point at which limited partners had been admitted, the determination was made that those partnerships should suspend sales and terminate those offerings. *See* Form 10–Q, June 30, 1989. Consistent with the foregoing, AIP immediately determined to suspend sales of limited partnership units.

*See id.* At the time AIP suspended sales, no limited partners had been admitted to the Partnership and all cash proceeds from investors had been held in escrow in accordance with the terms of the offering. Thereafter, AIP returned the cash proceeds placed in escrow plus interest from the sale of the offering. *See* Form 10–Q, September 30, 1989.

### E. The Complaint

On or about January 11, 1990, the Banks commenced this action against AIP[4] in the New York State Supreme Court.[5] The Amended Complaint asserts seven claims for relief. While the purported theories of recovery described are varied, the gist of each of these claims is that AIP conditioned its repayment obligations on the receipt of capital contributions from its limited partners or otherwise promised to create such a fund of capital contributions for the Banks' particular benefit, and that by terminating the offering, AIP wrongfully prevented what the Amended Complaint calls that "condition precedent" from occurring. Based upon this assertion, the Banks seek to recover against AIP on theories of breach of contract (Counts I, II and III), negligent misrepresentation (Count IV), unjust enrichment (Count VII), as well as on claims for equitable relief (Counts V and VI). The Bank seeks to recover payment of the entire outstanding principal balance of loans to AIP out of the general assets and property of AIP without regard to the limited recourse provisions contained in the promissory notes.

**3.** Prior to the filing of its petition for reorganization under chapter 11 of the Bankruptcy Code, Integrated was engaged directly, or through its ownership interests in various operating subsidiaries, in the management and operation of various properties and businesses including the sponsorship, syndication and management of hundreds of public and privately-offered real estate, aircraft and other limited partnerships. Integrated continues to manage and control its properties and businesses as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. Integrated is an intervenor-defendant in the action, *sub judice.*

**4.** The Amended Complaint also includes defendant First Security Bank of Utah, N.A. ("First

Security"), which is a national banking association with offices at Salt Lake City, Utah. Amended Complaint, ¶ 6. The Amended Complaint alleges that First Security is being sued in its capacity as Trustee under a March 1, 1989 Trust Agreement. *See id.*

**5.** By Notice of Removal, dated February 15, 1990, the Banks removed the action to the United States District Court for the Southern District of New York, and by Stipulation, dated March 23, 1990, the action was referred and transferred to this Court for hearing and determination. Thereafter, by Opinion and Order, dated September 11, 1990, this Court granted Integrated's motion to intervene as a party defendant and this Court, thereupon, determined to exercise jurisdiction over the adversary proceeding.

II. *Plaintiffs' Motion and Defendants' Cross Motion for Summary Judgment on Counts II and III*

In Count II of the complaint, the Banks set forth the loan amounts they are owed, that they made proper demand upon AIP for payment, that they have not been paid, and, therefore, AIP is in default on the promissory notes. The Banks' argue in Count III that AIP should not be permitted to rely on the limited recourse language of the Notes because AIP breached its obligation to create the fund to which recourse was limited. The Plaintiffs' principal argument is premised upon the existence of an implied obligation or condition precedent to the validity of the limited recourse provision in the Notes. Namely, if the provision which limits recourse to capital contributions is to be enforceable, the capital contributions must exist; here, they do not exist. Plaintiffs' assert that AIP has failed to create the fund out of which the Banks were to be paid, and, therefore, AIP is precluded from relying on the limited recourse provisions in the Notes. Accordingly, plaintiffs conclude they are entitled to recourse against the assets of AIP.

In addition, the Banks make a "bad faith" argument. First, not only did the implied condition precedent to the Banks' relegation to the limited recourse fail but, AIP acted in bad faith in causing the condition to fail. Second, the Banks argue that AIP breached the implied covenant of good faith and fair dealing which exists in all contracts. *See,* Restatement (Second) of Contracts § 205. Specifically, that AIP was or should have been aware of Integrated's financial problems and impending debt-service moratorium. Therefore, AIP acted in bad faith in failing to disclose this information to the Banks.[6]

Finally, Plaintiffs attempt to incorporate portions of the Prospectus and Form 10–Q into the Notes in order to buttress the arguments raised above.

6. This issue is also representative of the Banks' negligent misrepresentation claim in Count IV of the complaint.

A. Discussion

First, with respect to `Count II, in light of the limited recourse provision in the Notes, the demand for payment and the lack thereof—alone, does not give rise to a cause of action. Second, as for Count III, there was no implied condition precedent to the application of the limited recourse provision in the Notes to the Banks. Neither the Notes, case law, nor treatise law cited by the Bank Group support a reading into the Notes by this Court of an implied condition precedent.

The Notes do not expressly condition the applicability of the recourse provision upon the existence of capital contributions. Indeed, pursuant to the demand promissory note, upon demand by the holder of the Note, the Note would be paid by the promisor. If the promisor refused or was unable to pay on demand, the promisee's recourse was explicitly limited to capital contributions. The Notes do not state that capital contributions do or will exist, nor do the Notes state that capital contributions will be set aside or placed in escrow for payment of the promisee. In fact, the Prospectus, which the Banks attempt to incorporate into the Notes, explains that capital contributions may be used for various purposes, including the purchase of assets. *See* Prospectus, ¶ 25, at 35. Further, the capital contributions were not the "first line" of payment for the Banks but, only a "back-up," which is further bolstered by the guarantee of Integrated. The arguments made by the Bank Group would be a great deal more persuasive if the Notes provided that repayment of the loans (first or only basis) was to be made out of a specific account or fund, which was created solely for that purpose. Then, if the borrower never created the account or fund, the borrower would be estopped from asserting the non-existence of the fund as a defense to personal liability. However, that is not the case here.

The Banks cite case law to support their "implied obligation" theory. They place

particular reliance on *M. O'Neil Supply Co. v. Petroleum Heat & Power Co.*, 280 N.Y. 50, 19 N.E.2d 676 (1939), and *Public Market Co. v. Portland*, 171 Or. 522, 130 P.2d 624 (1942). However, this reliance is misplaced.

The case of *M. O'Neil Supply Co.*, is simply not apposite to the case, *sub judice*. In *M. O'Neil*, pursuant to a contract with a general contractor, plaintiff supplied materials to a subcontractor. The contract provided that plaintiff would be paid by the general contractor 5 days after completion of the subcontractor's work. In the suit by the plaintiff for payment from the general contractor, the general contractor asserted the defense of failure of condition precedent. Specifically, general contractor argued that the subcontractor's completion of the job was a condition precedent to payment of the supplier. The New York Court of Appeals analyzed the agreement and determined that the subcontractor's completion was not a condition precedent to payment of the supplier but, rather, a convenient means of fixing time for payment. In the alternative, the court determined that if it was a condition precedent, the general contractor could not rely on its failure to prevent recovery where nonperformance of the condition was caused or acquiesced to by the general contractor.

In *M. O'Neil*, the court's alternative determination that defendant could not raise the defense of condition precedent if it caused or consented to the failure of the condition was premised on an express condition precedent. In the case at Bar, there has been no finding of such a condition. Therefore, the Banks have put the "cart before the horse." [7]

Likewise, the *Public Market* case is of no moment for the Plaintiffs' cause. In that case, a builder brought suit against the City of Portland to receive payment pursuant to a contract. The defendant sought to escape liability by arguing that the funds from which defendant was to pay plaintiff never came into existence. The

fund was to be created through the sale of municipal securities, however, the City did not sell the securities because of the grave economic condition of the period (it was the great depression). The Oregon Supreme Court held for the plaintiff and required the City to make payment. However, the important distinction vis-a-vis the case before this Court, is that in *Public Market*, the court found that the contract was one for the payment of the purchase price out of a *particular fund* to be generated through the sale of municipal securities. *Public Market*, 130 P.2d 624, 637 (emphasis added). The court also found that the builder agreed by the terms of the contract to look solely to the fund for payment. *Id.* at 628. The Oregon court held that under such circumstances, the City was under an implied obligation to market and sell the securities, and that failure to do so was a breach of the contract. *Id.* at 628–29. In sum, where the City promised payment out of a particular fund to be created for the specific purpose of payment to the plaintiff, the City could not deny liability because of the non-existence of the fund, which was solely in its power to create. In the Notes, *sub judice*, there was no promise to create a particular fund for the payment of the Banks. Further, capital contributions were not to be used exclusively for payment of the Banks, and were referred to in the Notes only with regard to recourse, not for payment in the first instance. More importantly, the capital contributions were not the Banks *sole* source of payment.

The Bank Group also directs the Court's attention to particular treatise law. Nevertheless, as with the case law discussed above, the Banks have again misplaced their dependence.

For instance, Plaintiffs' refer to fundamental principles of contract law such as:

where the promise is to pay out of a fund to be realized in a certain way, there is an implied obligation to use reasonable diligence in performing the act upon

---

7. Clearly *M. O'Neil* is distinguishable in other facets as well. There, the defendant raised the defense of condition precedent to escape pay-

ment. Here, plaintiffs' offensively assert the existence of a condition precedent and add that defendant has caused it to fail.

which payment is contingent. In default of such diligence, payment becomes due without performance of the condition.

17 Am.Jur.2d, *Contracts* § 339 at 777–78 (footnotes omitted). However, this section assumes that there is a promise to pay out of a particular fund. Here, there was no such promise; the particular fund was only mentioned with regard to where recourse would be limited *if* AIP did not pay on demand. Thus, although AIP may have intended to repay the Banks with proceeds from capital contributions, that "intent" does not amount to a promise to pay out of those proceeds. The same *American Jurisprudence* section states that the general rule is "a promise to pay out of a particular fund does not create an absolute liability, in the absence of facts or circumstances showing the contrary." *Id.* at 777. The facts and circumstances here, clearly do not show the contrary.

Plaintiffs also reference treatise law on negotiable instruments:

> If such a fund does not come into existence, there is no liability of the maker, unless failure of the fund to come into existence is the fault of the promisor.

11 Am.Jur.2d, *Bills and Notes* § 149 at 191 (footnotes omitted). Again, this statement assumes that the instrument is made payable out of a particular fund. As noted previously, the instrument, *sub judice,* is not made payable out of a particular fund, but rather, "on demand," and if not paid on demand, recourse is limited to capital contributions.[8] Therefore, although the Banks would argue that the capital contributions were a particular fund from which payment is to be made, that is clearly a stretch of the facts. In any event, the section on *Bills and Notes* cited by the Bank Group is not applicable on other grounds. The statement quoted is out of context; the section in its entirety is a discussion of whether an instrument remains negotiable when it is payable out of a particular fund. Further, the statement quoted, by its own terms, limits the liability of the promisor to instances where the fund does not come into existence due to the "fault" of the

promisor. Since AIP was under no affirmative obligation pursuant to the terms of the Notes to create the fund for the Banks' benefit, the issue of fault does not require inquiry. Additionally, the Prospectus which the Banks seek to incorporate into the Notes expressly provides that the General Partner may terminate the offering in its sole discretion at any time. Thus, if there was an implicit obligation, it was only one of good faith. There is certainly no strong evidence presented by Plaintiffs that AIP acted in bad faith in not creating a fund of capital contributions; absent such evidence, a finding of bad faith cannot be supported.

The mere expectation that a debt will be paid out of some particular fund when the fund arises is insufficient to create an equitable lien on the fund. *See, e.g., Jackman v. Newbold,* 28 F.2d 107 (8th Cir. 1928). Here, a fund was never officially realized by AIP, yet, the Banks seek an equitable lien upon the assets of AIP. Although Plaintiffs undoubtedly expected that the loans would be paid out of the proceeds of the capital contributions, the Notes do not so state. The Notes contain no affirmative promise on behalf of AIP to pay the Banks out of capital contributions, rather, capital contributions are referred to solely to delineate the source to which recourse is limited.

Lastly, Plaintiffs' request this Court to incorporate the May 1, 1989 AIP Prospectus, as well as the September 30, 1989 Form 10–Q, into the Notes. In particular, the Banks point to the section of the Prospectus which asserts that AIP intends to sell a minimum of $15,000,000 in limited partnership units. With reference to the Form 10–Q, Plaintiffs' quote the clause which states that "the Partnership may make its acquisitions during the offering stage using short-term, unsecured financing at any time not exceeding $10 million *to be repaid as soon as practicable with the net proceeds of this offering*" (emphasis added). *See* Form 10–Q, at 10. However, the Notes are complete and unambiguous instruments; there is no provision which

---

**8.** In addition, there is the guarantee of

Integrated.

incorporates other documents. When parties to an agreement express their understanding in a written contract with the intention that it embody their full agreement, the Parol Evidence Rule generally bars the introduction of evidence of any prior or contemporaneous understanding if that evidence would vary or contradict the terms of the writing. *VJK Productions, Inc. v. Friedman/Meyer Productions, Inc.*, 565 F.Supp. 916, 919 (S.D.N.Y.1983). Moreover, parol evidence of the parties' intentions as to the terms of a contract is inadmissible when the contract is unambiguous. *See, CCG Assoc. I v. Riverside Assoc.*, 157 A.D.2d 435, 556 N.Y.S.2d 859 (1st Dep't 1990). Therefore, the introduction of the statements from these documents is improper, and the Court may not take them under consideration in rendering this decision.[9]

### B. Summary Judgment

■ In ruling on a motion for summary judgment, the court must review the pleadings, admissions and affidavits to determine if there is no genuine dispute as to any material fact, so that the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986) (quoting Fed.R.Civ.P. 56(c)). Summary judgment is appropriate where an instrument for the payment of money only is in issue, and there are no triable issues of fact. *See, e.g., Miller v. Steloff*, 686 F.Supp. 91, 93 (S.D.N.Y.1988); *Interman Indus. Products, Ltd. v. R.S.M. Electron Power, Inc.*, 37 N.Y.2d 151, 332 N.E.2d 859, 863, 371 N.Y.S.2d 675, 679 (1975) (quoting N.Y.C.P.L.R. § 3213). The

inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 599, 106 S.Ct. 1348, 1362, 89 L.Ed.2d 538 (1986) (quoting *United States v. Diebold Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)).

As demonstrated by the parties' Local Rule 13(h) statements, there are no genuine disputes of fact which would be identified as "material" by the substantive law cited above. Therefore, pursuant to the discussion above, the Banks' motion for summary judgment on Counts II and III is denied. In regard to Defendants' cross motion for summary judgment on Counts II and III, the Supreme Court in *Matsushita* noted that a summary judgment motion could not be defeated by plaintiff's assertion that inferences of wrongdoing could be drawn. 475 U.S. at 587, 106 S.Ct. at 1356. Therefore, the Banks' allegation of bad faith on behalf of AIP will not be given great weight. Accordingly, Defendants' cross motion for summary judgment on Counts II and III is granted.

### III. *Defendants' Motion for Summary Judgment on Count I*

■ Count I of Plaintiffs' Amended Complaint alleges the existence of an oral contract between the Banks and AIP, and the breach of such contract by AIP. The complaint alleges that during loan negotiations, AIP orally agreed to obtain sufficient funds through syndication of the partnership to make repayment to the Banks. Accordingly, the Banks believe that since AIP failed to obtain sufficient capital contribu-

---

**9.** It is important to note that the statements referred to by the Banks do not dispositively support their position in any event. For example, the Prospectus does *not* state that $15 million in limited partnership units will be sold, rather, it states that a minimum of $15 million in units (30,000 Units) will be offered on a "best efforts" basis, *i.e.*, that would be the minimum amount required for the syndication of the partnership. At any rate, a reading of the Prospectus would indicate that the $15 million figure was only referred to with regard to this minimum amount required for syndication. The Prospectus also states that the partnership may

be terminated at any time prior to the sale of the maximum number of units by the General Partner for any reason whatsoever. It also states that investments will be held in escrow at least until the minimum number of units are sold, *i.e.*, capital contributions would not even come into existence until the partnership was syndicated. Consequently, if the Banks rely on the Prospectus, they must rely on the whole Prospectus. As for the Form 10–Q, the statement quoted by the Bank group was merely an intention stated in an SEC report, and it was not part of the Notes.

tions to make repayment, AIP has breached its oral promise to make payment.

Defendants' motion for summary judgment on this Count is based on the existence of the promissory notes. According to Defendants, the written Notes contain the entire agreement between the parties, and, therefore, any alleged oral promise is not entitled to inquiry because, it would violate the Parol Evidence Rule. Accordingly, the defense believes the issue is ripe for summary judgment and can be decided as a matter of law in favor of the defense.

Nevertheless, the Defendants' position is not so convincing. Generally, the Parol Evidence Rule bars evidence of antecedent or contemporaneous understandings and negotiations which contradict or vary a writing, which completely and accurately reflects the agreement of the parties. *See, e.g., Garza v. Marine Transport Lines, Inc.,* 861 F.2d 23, 26 (2d Cir.1988); *Battery S.S. Corp. v. Refineria Panama, S.A.,* 513 F.2d 735, 739–40 (2d Cir.1975). Thus, evidence of an oral agreement which contradicts an extant written agreement, in most circumstances, will not be admitted. *Garza,* 861 F.2d at 26. Here, however, the alleged oral agreement does not necessarily contradict the Notes. For instance, the operative portions of the Notes merely express that payment will be made upon demand, and if not paid upon demand, recourse would be limited to capital contributions. Therefore, an alleged oral promise to obtain sufficient funds to repay the loans does not directly conflict with the operative portions of the Notes and the Parol Evidence Rule is not transgressed.

Summary judgment is a procedural sword which, when exercised, severs a party's right to present its case at trial. Therefore, when the court considers such a motion, it must draw all reasonable inferences and resolve all ambiguities in favor of the non-moving party. *Garza,* 861 F.2d at 26. Consequently, judgment cannot be rendered as a matter of law, and further factual evidence and briefing is required from the parties in order to resolve this dispute. Thus, Defendants' motion for summary judgment on Count I is denied.

## IV. *Defendants' Motion for Summary Judgment on Count IV*

Count IV of the Plaintiffs' Amended Complaint advances a claim for negligent misrepresentation against AIP. Specifically, that the Prospectus negligently misrepresented that "the partnership will be funded with contributions of not less than $15,-000,000," and that $15,000,000 would be the "minimum proceeds;" that AIP knew or should have known that such contributions would never in fact be made, and that AIP knew or should have known that the Banks would rely on such representations; and finally, that AIP owed a duty to the Banks to act with care in making such representations in the Prospectus.

■ Under New York law, elements of a cause of action in negligent misrepresentation include: (1) representation, (2) falsity, (3) defendant knew or should have known of falsity, (4) reliance, (5) defendant knew or should have known plaintiff would rely, (6) privity or special relationship, and (7) injury. *See generally* cases cited below.

■ Foremost, to establish falsity, there must be a statement of fact. The Prospectus statements cited by Plaintiffs are not facts, but future expectations which are not actionable. *See, Burgundy Basin Inn, Ltd. v. Watkins Glen Grand Prix Corp.,* 51 A.D.2d 140, 144–47, 379 N.Y.S.2d 873, 878–80 (4th Dep't 1976). AIP's representations necessarily entailed prediction and expectation. The statements were not based on "known certain and definite existing fact," *Id.* (citations omitted); the Banks were aware of this. The representations related to future events, not susceptible of accurate knowledge when made. The statements were at best speculation; therefore, they are not actionable.

Plaintiffs cite several cases in support of their position including *White v. Guarente,* 43 N.Y.2d 356, 363, 372 N.E.2d 315, 320, 401 N.Y.S.2d 474, 479 (1977); *Credit Alliance Corp. v. Arthur Andersen & Co.,* 65 N.Y.2d 536, 551, 483 N.E.2d 110, 493 N.Y. S.2d 435 (1985); *Glanzer v. Shepard,* 233 N.Y. 236, 238–39, 135 N.E. 275 (1922); and,

*Ossining Union Free School Dist. v. Anderson*, 73 N.Y.2d 417, 539 N.E.2d 91, 541 N.Y.S.2d 335 (1989). However, these cases are clearly distinguishable. The cases referred to implicated existing facts which were misrepresented.

■ There is also a question of privity or special relationship. In order to state a cause of action in negligent misrepresentation cases, there must exist privity of contract or a bond between the parties which is so close as to be the functional equivalent of contractual privity.[10] *See Ossining Union Free School Dist.*, 73 N.Y.2d 417, 419, 539 N.E.2d 91, 541 N.Y.S.2d 335 (1989). New York courts have only found liability, however, where the plaintiff's reliance was intended and the information was directly transmitted by the defendant. *See Brickman v. Tyco Toys, Inc.*, 722 F.Supp. 1054, 1062 (S.D.N.Y.1989) (citing *Credit Alliance*, 65 N.Y.2d at 545–46, 483 N.E.2d at 114, 493 N.Y.S.2d at 439). Further, defendants must have been aware that their statements were to be used for a particular purpose by a known party. *Id.* In *Brickman*, the district court dismissed negligent misrepresentation claims brought by shareholders based upon statements made in public disclosure documents including, a press release, quarterly reports, and a Form S–1 Registration Statement filed with the SEC. *Id.*

The Banks' Amended complaint fails to satisfy either of the requirements. First, privity must have existed at time of the alleged misrepresentation, it did not here. The Prospectus was released more than three weeks prior to the negotiation and execution of the Notes by the parties. Thus, there would have to had been a special relationship at the time the Prospectus was released. In view of the factors listed above as indicative of a special relationship, the Banks have failed to persuasively dem-

onstrate such a relationship existed.[11] Further, as stated in *American Protein*, "[i]n the absence of fraud and in the absence of a special relationship giving rise to a duty [at the time of information dissemination], it is up to the party hearing words he deems important to make them part of the contract." *American Protein*, 844 F.2d 56, at 64.

Moreover, Plaintiffs' have not met the criteria set forth for a successful cause of action in negligent misrepresentation. Paramount, among the criteria is the lack of falsity of fact(s); the statements could only be described as expectation. There being no factual disputes regarding this cause, Defendants' motion for summary judgment is granted.

## V. *Defendants' Motion for Summary Judgment on Count VII*

In Count VII of the Amended Complaint, Plaintiffs assert a cause of action for recovery based on a theory of unjust enrichment. Specifically, the Banks' loaned AIP approximately $10,000,000, which was used to purchase certain assets which are generating income; a real benefit to AIP. However, AIP refuses to pay on the Notes despite the lack of syndication of the limited partnership, which results in the availability of the assets or income to pay off the Banks' debt due to the lack of purpose for the continued use of the assets. Accordingly, Plaintiffs argue that AIP has been unjustly enriched to the detriment of the Banks.

■ Pursuant to New York law, the crucial inquiry in an action for unjust enrichment is whether it is against equity and good conscience to permit the defendant to retain what is sought to be recovered. *See* 22 N.Y.Jur.2d *Contracts* § 448 (1982 &

---

**10.** In New York, the law of negligent misrepresentation recognizes that "generally there is no liability for words negligently spoken" but that "there is an exception when the parties' relationship suggests a closer degree of trust and reliance than that of ordinary buyer and seller," *i.e.*, privity or special relationship. *American Protein Corp. v. A.B. Volvo*, 844 F.2d 56, 63 (2d Cir.1988) (citations omitted).

**11.** For example, the Banks have not shown that the information was directly transmitted to them or that the purpose of the information or its transmittal was to induce reliance by these particular banks. Further, there has been no showing of privity or special relationship at the time the information was transmitted.

Supp.1990) (citing *Paramount Film Distributing Corp. v. State*, 30 N.Y.2d 415, 334 N.Y.S.2d 388, 285 N.E.2d 695 (1972)). Since there is no question that the Banks conferred a benefit upon AIP, this Court must determine whether it is against good conscience to permit AIP to retain the fruits of that benefit, namely, the assets. Certainly, it would be against notions of equity to permit retention of enrichment if there was a want of ability for the enricher to be made whole. For example, if the Banks' sole means of restitution were the capital contributions which do not exist. However, here, there is an alternative means of recovery. Contemporaneous with the negotiation and execution of the Notes, the Banks requested and received the written guarantees of Integrated. Apparently, the Bank Group foresaw the possibility of not receiving payment from AIP. Thus, there is an additional mode of recovery. But, Plaintiffs would prefer to overlook the existence of the guarantees and move against AIP on alternative theories. The reason for this is obvious; Integrated is a debtor under protection of this Court and the Banks do not want to wait in line with other unsecured creditors for payment.

Further, as noted by Defendants in their memoranda, the principles of unjust enrichment do not apply where there is a valid express agreement between parties which covers the same specific subject matter. *See Chadirjian v. Kanian*, 123 A.D.2d 596, 506 N.Y.S.2d 880 (2d Dep't 1986); *In re North Broadway Funding Corp.*, 34 B.R. 620, 623 (Bankr.E.D.N.Y.1983) ("the doctrine of unjust enrichment is inapplicable where the relationship between the parties is founded upon a written agreement.") (citations omitted). Here, the Banks claim that the Court should imply an agreement between the parties whereby the Banks would be entitled to seek repayment of the outstanding loan balances against the assets of AIP. But, there is in existence a written agreement which covers the loan arrangement, and the limited recourse provisions in the Notes expressly prohibit the Banks' right of recourse against the assets of AIP.

Accordingly, there being no material facts in dispute, this Court may render judgment as a matter of law. It is this Court's determination that Plaintiffs have not demonstrated sufficiently compelling facts for this Court to sustain a cause based on a theory of unjust enrichment. Further, the Notes cover the subject matter upon which the Banks' theory of unjust enrichment is based. Thus, Defendants' motion for summary judgment is granted.

VI. *Defendants' Motion for Summary Judgment on Counts V and VI*

In Counts V and VI of the Amended Complaint, the Banks move for injunctive relief pursuant to Delaware law, to enjoin AIP from making any distributions of partnership assets. However, as the Banks concede in their papers, AIP and the Banks agreed to enter into an escrow agreement in connection with the sale of assets of AIP. Pursuant to such agreement, proceeds from the sale of assets will be held in escrow pending a final determination by the Court. Therefore, a determination on these Counts is not necessary at this juncture.

*Conclusion*

Accordingly, Plaintiffs' motion for summary judgment on Counts II and III is denied. Defendants' cross motion for summary judgment on Counts II and III is granted. Defendants' motion for summary judgment on Count I is denied. Further, Defendants' motion for summary judgment on Counts IV and VII is granted.

Settle Order consistent with this opinion on 5 days notice.