■ ALMON SCOTT, Individually and as a Partner in CRANBERRY MEADOW ASSOCIATES, Appellant-Respondent, v KEYCORP et al., Respondents, and KEY BANK OF NEW YORK N. A., as Successor by Merger to KEY BANK OF NORTHERN NEW YORK N. A. and KEY BANK OF CENTRAL NEW YORK N. A., Respondent-Appellant. [669 NYS2d 76] —Mikoll, J. Cross appeals from an order of the Supreme Court (Ceresia, Jr., J.), entered October 17, 1996 in Albany County, which, *inter alia*, partially granted a motion by defendants KeyCorp and Key Bank of New York N. A. for summary judgment and dismissed the complaint against KeyCorp.

In January 1986, with partial financing from defendant Key Bank of New York N. A. (hereinafter Key Bank), plaintiff purchased property in the Village of Saranac Lake, Franklin County. The property consisted of two parcels, one containing the Kehoe Motel and the other consisting of undeveloped land to be used for the construction of town houses. In 1987, plaintiff secured further financing from Key Bank for the construction of 12 town houses. In late 1987, plaintiff pursued plans for obtaining a Sheraton Hotel franchise to replace the Kehoe Motel, and again sought financing through Key Bank. He also applied for a Federal urban development action grant (hereinafter UDAG) for the project, which envisioned a 100-room hotel/conference center. Plaintiff states that Key Bank advised him that his own financial position was inadequate for a project of this magnitude, and that he would be required to have partners or investors on the project to contribute significant capital. Subsequently, plaintiff agreed to operate with defendant James Wood and Donald Kaestle on the project. Plaintiff, Wood and Kaestle then applied, individually and not as a partnership, to Key Bank for a $3,823,000 loan for construction and permanent financing.

By letter dated July 14, 1988 addressed to plaintiff, Wood and Kaestle individually, Key Bank committed to the loan contingent upon a number of terms and conditions including, *inter alia*, that a 1% commitment fee be paid at the time of the acceptance of the commitment, that the construction be performed by defendant Murnane Associates Inc., that a UDAG loan in the amount of $920,000 be obtained and that at least 30 days prior to closing Wood and Kaestle provide a $500,000

cash investment. The letter stated that "[t]his committment [sic] is valid for 45 days from the date of this letter and will expire on August 28, 1988". Beyond this provision, the letter specified no date by which closing of the loan was required to occur or by which events upon which the closing was contingent, e.g., obtaining the UDAG loan, would have to occur. Plaintiff, Wood and Kaestle signified their acceptance of the commitment by signing it where indicated.

Plaintiff alleges that subsequent to the issuance of the July 14, 1988 commitment letter, he undertook significant action and expended considerable money in reliance on same, including cessation of town house construction and operation of the Kehoe Motel, demolition of buildings, purchase of the Sheraton franchise, preparation of site plans, retention of architects and engineers, and formal application for the UDAG loan.

By letter dated August 29, 1988, plaintiff was notified that Key Bank "has declined your request for financing". In this letter, Key Bank states that although the request had been "contingently. approved", the decision to deny the loan was based upon further review by the bank's executive committee as well as the fact that the required $920,000 UDAG loan did not materialize. In this latter regard, plaintiff received notification in September 1988 that the UDAG loan had been approved in the reduced amount of $520,000. Plaintiff alleges that on August 29, 1988 he met with a representative of Key Bank and discussed the bank's financing of a smaller hotel project with a $1,500,000 loan to him individually. This financing never materialized.

During 1989 and 1990, plaintiff, Wood and Kaestle agreed to dissolve the partnership, Cranberry Meadow Associates, which they formed in July 1988 (and revised in Oct. 1988), although the actual transfer of plaintiff's interest in the partnership's real estate did not occur until July 1991.

In this action, commenced in August 1991, plaintiff has asserted six causes of action against Key Bank and defendant KeyCorp: (1) breach of the July 14, 1988 contract, (2) breach of an oral contract for the smaller loan, (3) breach of the obligation of good-faith, fair dealing, fiduciary duty and confidentiality, (4) promissory estoppel, (5) negligent misrepresentation, and (6) negligence. Against Wood, defendant James Murnane and Murnane Associates, plaintiff asserted a cause of action for tortious interference with his contractual relationship with the lending institutions.

The various defendants moved for summary judgment; plaintiff cross-moved for summary judgment and to amend his

complaint. Plaintiff appeals Supreme Court's dismissal of the complaint against KeyCorp, Murnane, Murnane Associates and Wood; its grant of summary judgment to Key Bank on all causes of action except the fourth, alleging promissory estoppel; its denial of plaintiff's motion for summary judgment, leave to amend his complaint and his claim for punitive damages. Key Bank appeals the court's denial of its motion for summary judgment as to the fourth cause of action.

Supreme Court properly analyzed and resolved the question of plaintiff's standing to maintain this action in the capacity of a surviving partner of Cranberry Meadows Associates. Plaintiff's reliance on *St. Lawrence Factory Stores v Ogdensburg Bridge & Port Auth.* (202 AD2d 844) is misplaced. While it is true that following dissolution of a partnership a partner may carry on the business of the partnership, plaintiff sold his partnership property prior to commencing this action and cannot claim to be continuing its business as a "surviving partner" (Partnership Law § 69 [2] [b]).

On this basis, we agree with Supreme Court's grant of summary judgment to Key Bank as to the first cause of action relating to the July 14, 1988 letter of commitment. Noting that the commitment letter was addressed to plaintiff, Wood and Kaestle individually, the court correctly observed that the parties clearly contemplated performance and participation of all three individuals, that any breach would relate to this joint interest, and that plaintiff cannot individually seek enforcement of the commitment without Wood and Kaestle.

We disagree, however, with Supreme Court's additional reason for the dismissal, i.e., that the commitment "expressly expired on August 28, 1988" and that the prospective borrowers "were required to close the loan on or before that date". We are unsure what the court intended to convey by the term "close the loan", but to the extent that it suggests executing mortgage documents and receiving loan proceeds, such a meaning would be antithetical to the very nature of this commercial transaction. Key Bank concedes in its brief on appeal that the deadline of August 28, 1988 was the date by which the commitment was to have been accepted. In our view, the language of the letter[1] as well as the number and nature of the conditions precedent (such as securing of the UDAG loan) make it clear that closing was neither feasible nor expected within a 45-day

---

1. For example, its provision for the payment of a total commitment fee of 2%, with 1% due at time of acceptance of the commitment and the balance upon closing, indicates that closing is to occur at some future, yet unspecified date.

period. In fact, the construction term was anticipated to span 15 months, during which loan proceeds would be paid as construction progressed and the construction loan would eventually be converted to permanent financing.

Plaintiff's second cause of action, alleging an oral contract for the loan of $1,500,000 for the construction of a smaller hotel, was properly dismissed as barred by the Statute of Frauds (see, *Grimm v Marine Midland Bank*, 117 AD2d 901). In view of the ruling as to the first two causes of action, we likewise agree with the dismissal of plaintiff's third cause of action for breach of Key Bank's implied duty of good-faith and fair dealing.

Supreme Court sustained plaintiff's fourth cause of action alleging promissory estoppel, but only as to Key Bank's alleged oral promises to loan plaintiff $1,500,000 for his smaller, individual project. While we agree with the court's denial of summary judgment on this cause of action, we believe that it encompasses the July 14, 1988 letter of commitment as well, perhaps more aptly than the alleged subsequent oral promise relative to the smaller project. Although plaintiff cannot seek damages in a breach of contract action based upon the July 14, 1988 letter independent of Wood and Kaestle, he is not foreclosed from attempting to establish his detrimental reliance on it.[2] As numerous triable issues of fact exist, summary judgment is not proper.

Plaintiff's fifth and sixth causes of action, alleging negligence and negligent misrepresentation against Key Bank, were also properly dismissed. A breach of contract claim cannot be converted into a tort action absent the violation of a legal duty independent of that created by the contract (see, *Clark-Fitzpatrick, Inc. v Long Is. R. R. Co.*, 70 NY2d 382, 389; *Fourth Branch Assocs. Mechanicville v Niagara Mohawk Power Corp.*, 235 AD2d 962, 963-964; *Wegman v Dairylea Coop.*, 50 AD2d 108, 112, *appeals dismissed* 38 NY2d 710, 918). Plaintiff has failed to allege either a duty or special relationship with Key Bank distinguishable from the contract itself (see, e.g., *Murphy v Kuhn*, 90 NY2d 266, 270).

Summary judgment was properly granted on plaintiff's

---

**2.** We recognize that there are numerous issues of fact as to whether the commitment was effectively accepted. For example, there is a dispute as to whether the commitment fee was paid or offered at the time of acceptance, raising an issue of fact precluding summary judgment. Evidence on this point would not be barred by the parol evidence rule because it would consist of evidence not of prior or contemporaneous negotiations, but of subsequent negotiations (see, *Chemical Bank v Kaufman*, 142 AD2d 526).

seventh cause of action against Wood, Murnane and Murnane Associates. Plaintiff has failed to establish sufficient evidence of tortious interference with a contractual relationship (*see, Guard-Life Corp. v Parker Hardware Mfg. Corp.*, 50 NY2d 183, 189).

Supreme Court properly denied plaintiff leave to amend his complaint to allow recovery for punitive damages. While leave to amend should be freely given, there must be a modicum of merit to the proposed amendment. Plaintiff has failed to make the required "extraordinary showing of a disingenuous or dishonest failure to carry out a contract" (*Gordon v Nationwide Mut. Ins. Co.*, 30 NY2d 427, 437, *cert denied* 410 US 931), without which punitive damages are not ordinarily recoverable in a breach of contract action (*see, Rocanova v Equitable Life Assur. Socy.*, 83 NY2d 603, 613).

KeyCorp, a holding company of which Key Bank was a wholly owned subsidiary, was properly dismissed from this action given plaintiff's failure to establish a triable issue of fact concerning its participation in the transaction which is the subject of his lawsuit.

We have considered the parties' remaining contentions and find them without merit.

Cardona, P. J., Crew III and Spain, JJ., concur. Ordered that the order is affirmed, without costs.