**In re INFILTRATOR SYSTEMS, INC., Debtor.**

**No. 98–20488.**

United States Bankruptcy Court, D. Connecticut.

May 11, 2000.

---

Christopher C. Hug, Rhonda J. Tobin, Robinson & Cole, LLP, Hartford, CT, co-counsel for debtor.

Barry S. Feigenbaum, Rogin, Nassau, Caplan & Hirtle, P.C., Hartford, CT, co-counsel for debtor.

Douglas M. Evans, Kroll, McNamara & Evans, LLP, John B. Simoni, Jr., Goetz, Fitzpatrick, Most & Bruckman, LLP, c/o Douglas M. Evans, Kroll, McNamara & Evans, LLP, West Hartford, CT, co-counsel for Prestige Bay Plaza Development Corporation, Prestige Properties & Development Co., Inc., Mall 1–Bay Plaza, LLC and Mall 2–Bay Plaza, LLC.

*RULING ON DEBTOR–IN–POSSESSION'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON ITS OBJECTION TO CLAIM OF PRESTIGE BAY PLAZA DEVELOPMENT CORP., PRESTIGE PROPERTIES & DEVELOPMENT CO., INC., MALL 1–BAY PLAZA, LLC, AND MALL 2–BAY PLAZA, LLC*

ROBERT L. KRECHEVSKY, Bankruptcy Judge.

I.

The matter before the court is the motion of Infiltrator Systems, Inc., the debtor-in-possession ("the debtor") in a Chapter 11 bankruptcy case, for partial summary judgment on its objection to an amended proof of claim of Prestige Bay Plaza Development Corp., Prestige Properties & Development Co., Inc., Mall 1–Bay Plaza, LLC, and Mall 2–Bay Plaza, LLC (together "Prestige")[1]. Prestige had filed an amended proof of claim in the amount of $4,959,183.76 to which it later attached a complaint set-

---

**1.** "The contested matter initiated by an objection to a claim is governed by Rule 9014...." Advisory Committee Note to Fed.R.Bankr.P. 3007. Rule 9014 provides that Rule 7056 (summary judgment) applies in contested matters.

ting forth nine causes of action seeking recovery of compensatory and punitive damages allegedly caused by failure of the Maximizer stormwater chambers manufactured by the debtor and installed on Prestige's property by GJF Construction Corp. d/b/a/ New York City Builders ("the builders"). The debtor's motion seeks judgment for the debtor on all claims for punitive damages and on those causes of action in Prestige's complaint based upon various torts: strict product liability (First Cause of Action), negligence (Third Cause of Action), negligent misrepresentation (Fourth Cause of Action) and prima facie tort (Ninth Cause of Action).[2] The debtor contends that "punitive damages, as a matter of law and equity, have no place in bankruptcy proceedings" because they unfairly penalize other creditors, and interfere with the successful reorganization of the debtor. (Debtor's Mem. at 5.) The debtor further argues that the tort causes of action are barred under the economic loss doctrine. "Because this matter involves express warranty, implied warranty and third party beneficiary claims, all of which are 'contract' based claims, [the debtor] is entitled to summary judgment on [Prestige's] claims grounded in tort, namely the First, Third, Fourth and Ninth Causes of Action." (Debtor's Mem. at 8.)

Prestige objects to the granting of the debtor's motion contending that neither the punitive damages claims nor the tort causes of action are barred as a matter of law. Prestige also argues it has not had sufficient time to engage in pretrial discovery to permit the court to consider any of the debtor's contentions.

## II.

### Background

The debtor is a Connecticut corporation which develops and manufactures plastic components utilized in septic and stormwater management systems. Prestige consists of several New York corporations and limited liability companies which are the owners and developers of a shopping center complex located in the Bronx, New York ("the premises"). On June 25, 1996, Prestige contracted with the builders for the construction on the premises of a paved parking lot and all related improvements thereto, including a stormwater drainage and retention system utilizing the Maximizer chambers manufactured by the debtor. On July 8, 1996, the builders entered into a purchase order with the debtor for the Maximizer chambers. The purchase order, a one-page letter, addressed to the debtor from the builders, stated in pertinent part:

> This letter will function as our contract with you to furnish and deliver to the job site the "maximizer chamber system" in accordance with Henderson and Bodwell's drawings 3 of 8 and 4A of 8 dated June 7, 1996, for the amount of $56,832.00. This work includes all the material for the chambers, bridges, and plates and corrugated plastic piping. In addition, the work includes a field technician to monitor and sign-off the installation. A product warranty will be provided for the maximum length of time.

Installation of the Maximizer chambers began in September, 1996 and continued into October, 1996. On October 21, 1996, the Maximizer chambers failed, "causing the loss of all site preparation and installation work for the storm drainage and detention system in place." (Prestige's Statement of Material Facts under D.Conn.L.Civ.R. 9(c)(2) ¶ 27.) The debtor, on February 6, 1998, filed its Chapter 11 bankruptcy petition.[3] Prestige's latest amended proof of claim seeks damages for the replacement

---

**2.** The remaining five causes of action are based upon express warranty, implied warranty, breach of contract, intentional fraud, and violation of New York General Business Law § 349.

**3.** The Prestige proof of claim is one of over seventy similar claims, and a separate Official

**711**

of the storm drainage system, consequential damages, including loss of rents due to the delay, and punitive damages.

## III.

### A. Summary Judgment Standard

Fed.R.Civ.P. 56(c), made applicable in bankruptcy proceedings by Fed. R.Bankr.P. 7056, provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (*quoting* Fed.R.Civ.P. 56(c)). "The Second Circuit has repeatedly noted that as a general rule, all ambiguities and inferences to be drawn from the underlying facts should be resolved in favor of the party opposing the motion, and all doubts as to the existence of a genuine issue for trial should be resolved against the moving party. If, when viewing the evidence produced in the light most favorable to the nonmovant, a rational trier could not find for the nonmovant, then there is no genuine issue of material fact and entry of summary judgment is appropriate." *Chase v. Columbia National Corp.,* 832 F.Supp. 654, 659 (S.D.N.Y.1993) (quoting *Brady v. Town of Colchester,* 863 F.2d 205, 210 (2d Cir.1988); *Binder v. Long Island Lighting Co.,* 933 F.2d 187, 191 (2d Cir. 1991)) (internal quotation marks and citations omitted).

### B. Choice of Law

 "The conflict of laws rules to be applied by the federal court in [a State] must conform to those prevailing in [that State's] state courts." *Klaxon Co. v. Stentor Electric Mfg. Co., Inc.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Accordingly, "the law of the state in which

the bulk of the contracting transactions took place should be applied." *Reichhold Chemicals, Inc. v. Hartford Accident and Indemnity Co.,* 243 Conn. 401, 414, 703 A.2d 1132 (1997) (stating the choice of law rules applicable in Connecticut). The parties agree that New York substantive law applies in the present matter.

## IV.

### A. Punitive Damages

 The debtor's argument that punitive damages should be disallowed as a matter of law because they impose a penalty on innocent creditors lacks merit. In considering a similar argument with regard to the equitable subordination of tax penalties, the United States Supreme Court held that the bankruptcy courts could not categorically disallow such claims. *United States v. Noland,* 517 U.S. 535, 116 S.Ct. 1524, 134 L.Ed.2d 748 (1996); *see also United States v. Reorganized CF & I Fabricators of Utah, Inc.,* 518 U.S. 213, 229 116 S.Ct. 2106, 135 L.Ed.2d 506 (extending "the principle of *Noland"* to Chapter 11 cases). Its equity jurisdiction "permits a [bankruptcy] court to make exceptions to a general rule when justified by particular facts," not to make "a categorical distinction at a legislative level of generality." *Noland,* 517 U.S. at 540–41, 116 S.Ct. 1524. The court, therefore, may disallow or subordinate any claim for punitive damages only in light of all the relevant facts and circumstances presented in the matter before it. Irving Pergament, a Prestige officer, asserts in his affidavit that the debtor is solvent and, except for claims arising from the sale of the Maximizer chambers which constituted only a small portion of the debtor's business, presents a strong balance sheet and net operating income. Prestige therefore disputes the debtor's assertions that the allowance of punitive damages would harm

Committee of Products Liability Claimants has been established in the debtor's Chapter 11 case.

other creditors and impede the debtor's attempt to reorganize—both of which are material to a determination of whether a claim for punitive damages should be allowed. *See, e.g. Jim Walter Homes, Inc. v. Bell,* 247 B.R. 510 (Bankr.M.D.Fla.2000). While a party opposing a motion for summary judgment cannot rest on mere allegations or denials of facts to establish the existence of a dispute, Prestige argues that it has not yet had sufficient time to complete its discovery and lacks knowledge of the facts and circumstances essential to justify its opposition.[4] The court, in the exercise of its discretion under Fed. R.Civ.P. 56(f),[5] concludes that summary judgment on the issue of punitive damages is inappropriate and, therefore, denies the debtor's motion on the issue of punitive damages. *See* Fed.R.Civ.P. 56 advisory committee notes to 1963 amendment ("And summary judgment may be inappropriate where the party opposing it shows under subdivision (f) that he cannot at the time present facts essential to justify his opposition.").

### B. Strict Products Liability and Negligence

### (First and Third Causes of Action)

■ Prestige seeks to recover, under a strict products liability theory in the First Cause of Action and under a negligence theory in the Third Cause of Action, the expenses it incurred in connection with replacement of the drainage system and its consequential damages, loss of profits and rents. The debtor argues that these tort actions are barred by the economic loss doctrine. The court agrees. Under the economic loss doctrine, no "cause of action in tort is stated when a defective product purchased in a commercial transaction

malfunctions, injuring only the product itself and causing purely economic loss." *East River Steamship Corp. v. Transamerica Delaval, Inc.,* 476 U.S. 858, 859, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986) (holding economic loss doctrine applicable in admiralty law); *Bocre Leasing Corp. v. General Motors Corp.,* 84 N.Y.2d 685, 688, 621 N.Y.S.2d 497, 645 N.E.2d 1195 (1995) (adopting the "sound reasoning" and "bright line rule" of *East River* to bar recovery in tort for a commercial purchaser's loss of a helicopter and consequential loss of profits caused by a the failure of a defective component.).

■ The rationale underlying the economic loss doctrine is that the allocation of risk between a manufacturer and a commercial purchaser is a matter for negotiation. The extent of warranty coverage and the availability of insurance is reflected in the agreed upon purchase price. The Supreme Court distinguished between "traditional property damage cases [where] the defective product damages other property" and the kind of case where the defective product damages only itself or the property of which it is a component part. The Supreme Court held that "[w]hen a product injures only itself the reasons for imposing a tort duty are weak and those for leaving the party to its contractual remedies are strong.... Contract law, and the law of warranty in particular, is well suited to commercial controversies of the sort involved in this case because the parties may set the terms of their own agreements.... [W]e see no reason to intrude into the parties allocation of risk. While giving recognition to the manufacturer's bargain, warranty law sufficiently protects the purchaser.... The expectation damages available in warranty for purely economic loss .... [would give a purchaser its

---

4. As of this date, the debtor has not filed its promised amended disclosure statement and plan of reorganization.

5. Fed.R.Civ.P. 56(f) provides:
 (f) When Affidavits are Unavailable. Should it appear from the affidavits of a party opposing the motion that the party

cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

repair or replacement costs and its lost profits or rents] and would place them in the position they would have been in had the [defective component] functioned properly. Thus, both the nature of the injury and the resulting damages indicate it is more natural to think of injury to a product itself in terms of warranty." *East River*, 476 U.S. at 872–74, 106 S.Ct. 2295.

In the matter before the court, all of the entities involved—the debtor, Prestige and the builders—are commercial entities. The only physical damage alleged to have been caused by the failure of the Maximizer chambers was to the drainage system of which the Maximizer chambers were a component. Although the alleged damage involved components of the drainage system other than the Maximizer, Prestige has not alleged damage to property other than the drainage system. The court concludes that under New York law, applying the "bright line rule" [6] adopted by the New York Court of Appeals, *Bocre*, 84 N.Y.2d at 688, 621 N.Y.S.2d 497, 645 N.E.2d 1195, the debtor's motion for summary judgment on the First and Third causes of action of its complaint must be granted. *Cf. Joseph v. David M. Schwarz/Architectural Services, P.C.*, 957 F.Supp. 1334, 1342 (S.D.N.Y.1997) (defendant's summary judgment motion granted as to plaintiff's negligence claim where plaintiff brought action for breach of contract, negligence and unjust enrichment based upon contract for architectural services).

### C. *Negligent Misrepresentation*

### (Fourth Cause of Action)

In the Fourth Cause of Action, Prestige asserts that the debtor represented to it that the debtor's products were suitable and could perform the functions for which purchased; that these representations were "negligently and/or inaccurately made" and that Prestige "reasonably and justifiably relied to their detriment upon the negligent misrepresentations." (Complaint at ¶¶ 34, 35.) The affidavit of Irving Pergament, submitted in opposition to the debtor's motion, avers that the debtor was aware of the deficiencies in its products and "maliciously, knowingly and willfully failed to advise Prestige Bay or its agents or Builders of same." (Affidavit at ¶ 33.)

Under New York law, as noted in the preceding section, a party who is "merely seeking to enforce its bargain" under a contract cannot maintain a tort action. *New York University v. Continental Insurance Co.*, 87 N.Y.2d 308, 316, 639 N.Y.S.2d 283, 662 N.E.2d 763 (1995). "Under New York law, elements of a cause of action in negligent misrepresentation include: (1) representation, (2) falsity, (3) defendant knew or should have known of falsity, (4) reliance, (5) defendant knew or should have known plaintiff would rely, (6) privity or special relationship, and (7) injury." *Canadian Imperial Bank of Commerce v. Aircraft Income Partners II, L.P.* (*In re Integrated Resources, Inc.*), 123 B.R. 181, 189 (Bankr.S.D.N.Y.1991). "The law of negligent misrepresentation, as enunciated in New York, recognizes that generally there is no liability for words negligently spoken but that there is an exception when the parties' relationship suggests a closer degree of trust and reliance than that of the ordinary buyer and

---

**6.** Although the parties discuss whether the contract was predominantly one for goods (the Maximizer chambers) or services (primarily installation and design), "[a]s a general rule, where a product fails to perform as promised due to negligence *in either the manufacturing or installation process*, a plaintiff is precluded from recovering tort damages for its economic loss." *Suffolk Laundry Services, Inc. v. Redux Corp.*, 238 A.D.2d 577, 656

N.Y.S.2d 372, 374 (App.Div.1997) (emphasis added; citations omitted); *Cf. Joseph v. David M. Schwarz/Architectural Services, P.C.*, 957 F.Supp. 1334, 1342 (S.D.N.Y.1997) (defendant's summary judgment motion granted as to plaintiff's negligence claim where plaintiff brought action for breach of contract, negligence and unjust enrichment based upon contract for architectural services).

seller.... In the absence of fraud and in the absence of a special relationship giving rise to a duty, it is up to the party hearing words he deems important to make them part of the contract.... Even assuming that the statements ... were negligently spoken, no cause of action exists .... [where the plaintiff] fails to allege that there was a special relationship between it and [the defendant] before the contract was signed.... Since [the plaintiff] alleges nothing more than ordinary arm's length negotiations, its negligent misrepresentation claim fails as a matter of law." *American Protein Corp. v. AB Volvo,* 844 F.2d 56, 63–64 (2d Cir.1988) (citations and quotation marks omitted); *see also Canadian Imperial Bank of Commerce v. Aircraft Income Partners II, L.P. (In re Integrated Resources, Inc.),* 123 B.R. 181, 189 (Bankr.S.D.N.Y.1991) (granting summary judgment for defendants where plaintiffs did not allege a special relationship existed at the time the alleged misrepresentation was made, prior to the contract); *Scott v. KeyCorp,* 247 A.D.2d 722, 669 N.Y.S.2d 76, 79 (App.Div.1998) (affirmed granting of summary judgment for defendant on claim of negligent misrepresentation where "Plaintiff has failed to allege either a duty or special relationship with [defendant] distinguishable from the contract itself.")

Because the complaint, together with the supporting affidavit, fails to allege facts sufficient to establish the elements of a cause of action for negligent misrepresentation, the debtor's motion for summary judgment on the Fourth Cause of Action alleging negligent misrepresentation is granted.

### D. Prima Facie Tort

#### (Ninth Cause of Action)

Prestige's complaint seeks recovery in the Ninth Cause of Action under a theory of prima facie tort. "The essence of [a cause of action for prima facie tort under New York law] is (1) the intentional infliction of malicious injury solely to harm another, (2) resulting in special injuries, (3) without economic or social excuse or justi-fication, (4) by means which would otherwise be lawful, and ... there can be no recovery unless a disinterested malevolence to injure plaintiff constitutes the sole motivation .... a malicious one unmixed with any other and exclusively directed to injury and damage of another." *Molinoff v. Sassower,* 99 A.D.2d 528, 471 N.Y.S.2d 312, 314 (App.Div.1984) (citations and internal quotation marks omitted). While alleging in its complaint that the debtor, "motivated solely by disinterested malevolence" and "without excuse or justification" inflicted harm upon it, Prestige failed to support such contentions with its responsive affidavits. (Complaint at ¶¶ 63–64.) In its own statement of the facts, Prestige contends that the debtor, who is in the business of manufacturing and selling components for stormwater and septic systems was and is engaged in a profitable enterprise. (Prestige's Facts ¶¶ 4–7.) Prestige offers no plausible basis for a possible finding that the debtor's sale of the Maximizer chambers for use in the Prestige project was not to some extent motivated by the expectation of making a profit, or that the debtor sold the Maximizer chambers to Prestige or to the builders for the sole purpose of maliciously inflicting harm on Prestige. Accordingly, the debtor's motion for summary judgment on the Ninth Cause of Action is granted.

### V.

#### Conclusion

For the foregoing reasons, the debtor's motion for partial summary judgment is GRANTED on the First Cause of Action (strict products liability), Third Cause of Action (negligence), Fourth Cause of Action (negligent misrepresentation) and Ninth Cause of Action (prima facie tort) and DENIED on the issue of punitive damages. It is

SO ORDERED.